# WIKE ET AL. V. CAMPBELL.

1.  It is well settled that papers filed in the progress or trial of a cause at *nisi prius*, and not intrinsically parts of the record, cannot become such by being incorporated therein.

2.  The provisions of the R. S. establishing the mode · of procedure in taking and prosecuting appeals from judgments of justices of the peace, remain in force, but under the act of March 14, 1877, such appeals lie to the county court, instead of the district court.

*Error to County Court of Boulder County.*

THE case is stated in the opinion.

Mr. PLATT ROGERS, for plaintiff in error.

Mr. RICHARD H. WHITELY, for defendant in error.

BECK, J.   The plaintiff in error sued out a writ of attachment before a justice of the peace of Boulder county against the goods and chattels of Partridge & Moore, copartners, and caused the same to be levied upon certain articles of personal property, as the property of said copartners.

Samuel J. Campbell, defendant in error, claiming to be the owner of the attached property, filed his affidavit before the Justice, setting forth his claim to the property under the provisions of section 12 of the Attachment Act of 1879, Sess. Laws, p. 21.

Upon the trial the Justice found the issues against the defendants, Partridge & Moore, and rendered judgment against them for the amount of the plaintiff's demand.   Upon trial of the issue joined as to Campbell, it was adjudged against him, the court finding that Partridge & Moore were the owners of 'the goods and chattels claimed, and that they were subject to the writ of attachment.

Appeals were prayed from the judgments of the Justice by

Wike et al. v. Campbell.

Partridge & Moore, and also by Campbell, to the County Court of Boulder County, but the only appeal in fact taken was that prayed by Campbell, the other parties failing to execute an appeal bond. Upon trial *de novo* in the county court, defendant in error recovered a judgment in his favor, to reverse which Wike and Ellison bring this writ of error.

It is assigned for error, among other things, that the county court erred in denying the motion of plaintiff in error to dismiss Campbell's appeal, and that it erred in permitting him, against their objections, to file a new or amended appeal bond. There is no bill of exceptions in the case, and while the written motion to dismiss, as well as the original and amended bonds, have been copied into the record by the clerk of the court below, it is well settled that papers filed in the progress or trial of a cause at *nisi prius*, and not intrinsically parts of the record, cannot become such by being incorporated therein. They are still extrinsic—are *de hors* the record—and can only be made part of it by a bill of exceptions. This rule embraces affidavits, bonds, stipulations of parties, the contents of written motions, as well as all other papers belonging to the files which are not intrinsically parts of the record. *Filley* v. *Cody*, 4 Col. 542. *Anderson* v. *Sloan*, 1 Col. 33, and cases there cited ; *Smith* v. *Wilson*, 26 Ill. 187; *Eggleston* v. *Buck*, 24 Ill. 262 ; *Douglass* v. *Parker*, 43 Ill. 146; *Wilson* v. *McDowell*, 65 Ill. 522. In the absence of a bill of exceptions, therefore, the contents of the appeal bonds filed by Campbell, and the grounds assigned in the motions to dismiss the appeal, are not before us in such manner that we can look into them for the purpose of determining the regularity of the appeal, or whether the county court acted properly or otherwise in denying the motions to dismiss and in allowing defendant in error to file an amended appeal bond.

The same observations apply to the supposed appeal of Partridge & Moore; but since the record fails to show that any appeal was taken by them, or that the county court adjudicated the cause as to them, there is no cause pending here as to these parties.

In this state of the record, the only question which properly arises for our consideration is, whether the county court had jurisdiction to entertain the appeal taken by defendant in error, and to grant him a trial *de novo*.

It is contended by counsel for plaintiffs in error, that in the present condition of our statutes upon this subject, no provisions exist for perfecting and trying appeals of this nature.

By Section 38 and succeeding sections of Chapter 50, R. S., appeals from judgments of justices of the peace lay to the district court, and the trial was *de novo*.

All necessary regulations for perfecting and prosecuting such appeals are incorporated in this act, and Section 43 extends the right to one or more plaintiffs or defendants, without consent of the others. The first State Legislature, by Section 3 of an act entitled "An act in relation to the jurisdiction of justices of the peace, and the practice in justices' courts," approved March 14, 1877 (General Laws, Sec. 1,599), provides as follows: "All appeals from judgments of justices of the peace, both in civil and criminal matters, shall be taken to the county court of the same county, and no appeal shall lie from a judgment of a justice of the peace in any cause, civil or criminal, to the district court."

The last section of this act is as follows: "All acts and parts of acts inconsistent with this act are hereby repealed."

Referring to the General Laws (1877), we find chapter 50, R. S., copied into this volume as a portion of chapter 55, the section before alluded to being modified so as to read "county court" instead of "district court" in all instances. The word "district" has been stricken out wherever it occurred, and the word "county" inserted, which are the only changes made in this particular. As the chapter has been transcribed and now appears in the general laws, appeals lie to the county court, and all necessary regulations exist for rendering them effectual. But the authority thus to modify the former law and to compile the statutes on the subject in their present shape is questioned.

Wike et al. v. Campbell.

The general laws were compiled and the modifications complained of were made by the first Secretary of State after the adoption of the constitution, under the provisions of an act approved March 22, 1877, requiring him "to prepare or cause to be prepared and printed, all the general laws passed by the General Assembly; all general laws now in force and not repealed by this General Assembly, the same to be arranged in a concise and compact form, so as to have all the law upon each subject arranged together under the same title as far as practicable," etc. Section four of this act provided that the secretary should make and print with said laws his certificate certifying that they were published by authority of the State, and such certificate so printed should be *prima facie* evidence of the existence of such laws in all the courts of the State. A subsequent section provided that when the secretary was in doubt whether any of the general laws found in the former prints of the statutes, would remain in force after the year 1877, such laws concerning which he was in doubt, should be printed, and all laws that he might decide would not remain in force, should not be printed. This section concluded with the following provision: "That the printing, or omission to print any law, or matter purporting to be law, in any volume authorized to be issued by this act, shall not operate to revive, to enact, or to repeal any such law."

It may be conceded that no authority was conferred upon the Secretary of State by the act just referred to, to change the phraseology of the prior law regulating appeals from judgments of justices of the peace, whether he had or had not doubts that the same remained in force, and that his duty was to publish the former act, if at all, as it stood in the revised statutes, without striking out or inserting any words to make it conform to the change of forum made by the act of 1877, or for the purposes of the question before us, it may be considered that the provisions of the prior law were not published at all by the secretary. In either case, the question for our determination is the same, viz.: Do the provisions of the Revised

Statutes establishing the mode of procedure in taking and prosecuting appeals from judgments of justices of the peace remain unrepealed and in force?

In construing statutes the controlling rule of construction is to arrive at the intent of the legislature. This is to be gathered from the act itself, and from the words employed, if possible. When the act is not explicit it is to be gathered from the occasion and necessity of the law. The previous state of the law upon the subject is also to be considered, for the former law and the designed remedy may be regarded as the causes which moved the legislature to enact the new law. Potter's Dwarris on Statutes, page 184.

The statutes under consideration being upon the same subject, are in *pari materia*, and in accordance with the rules of construction in such case, may be compared and considered together as one law, for the purpose of arriving at the legislative intent. Sedgwick on Con. Stat. p. 209. The doubt as to the construction intended to be given the subsequent act in this case arises from the omission of the framers to insert therein any provision regulating the practice upon appeals, or specifically adopting or referring to the former practice upon that subject. It is supposed that by the silence of the act on the point, the former practice, as well as the forum to which it pertained, was swept away by the repealing provisions of the subsequent statute. But comparing together the former and the latter acts, keeping in view the rules and principles just mentioned, we are clearly of the opinion that the legislature simply intended to change the appellate forum from the district court to the county court, and that this was the only change designed to be made in the former law. In other words, that the subsequent act was designed to amend the former act in this single particular. It di l not expressly repeal chapter 50, R. S., or any of its provisions, and it has always been held that a repeal by implication is not to be favored. It is only when a later statute on the same subject is plainly repugnant to the former, or revises, or fully em-

Wike et al. v. Campbell.

braces the whole subject-matter of a former statute, that a repeal by implication is allowed. *Duggan* v. *Gittings*, 3 Gill. 138.

The acts under consideration are both affirmative statutes. The former prescribes both the appellate forum and the appellate procedure; the latter act prescribes a different forum, without any procedure, and contains a negative provision that appeals shall not be taken to the forum mentioned in the prior act. That portion of the former act, therefore, providing for appeals to the district court is inconsistent with the provisions of the subsequent act, and to this extent the former act is repealed. In respect to all other provisions of the two statutes no conflict or inconsistency whatever is perceived, but, taken together, the acts are consistent and harmonious, and constitute a complete remedy. On the other hand, neither act, separately considered, is complete in itself, and neither furnishes an adequate remedy without the aid of the other. One has no forum; the other no procedure. Thus it is apparent that the construction contended for by plaintiff in error will defeat the legislative will, for it is manifest that no such result was contemplated.

It is the duty of courts to so construe statutes, if possible, as to avoid absurd results not within the evil to be remedied, and evidently not within the contemplation of the legislature. *People* v. *Turner*, 39 Cal. 370.

Being affirmative statutes, the rule applies in this case, that such parts of the prior statute as may be incorporated into the subsequent act as consistent with it, must be considered in force. *Davis* v. *Fairburn*, 3 How, 515.

Or, treating the subsequent act as an amendment of the former act, the rule laid down in *Harrell* v. *Harrell*, 8 Flor. 46, is in point, that an amendatory act and the act amended, are to be construed as one statute, and no portion of either is to be held inoperative, if it can be sustained without wresting words from their appropriate meaning.

We see no occasion to hold that the provisions of the Re-

vised Statutes relating to the procedure on appeals from justices of the peace shall be inoperative in the present condition of the statutes; for, by adopting the principles and rules referred to, we avoid all absurd consequences, and reach a result consistent with settled rules of construction, and we doubt not, in strict accordance with the object and intent of the legislature.

It must be conceded that there is a defect of language in the act of 1877, to express fully the will of its framers, but their intent being ascertained, the construction adopted falls within the maxim that a thing that is within the intention of the makers of the statute is as much within the statute as if it were within the letter. 9 Bacon's Abr. Title, Stat. p. 247.

It is not surprising that the first State legislature, amid the onerous and perplexing duties of enacting a body of new laws and of remodeling the territorial statutes so as to harmonize and adapt their provisions to the requirements of the constitution, and to the altered condition of things, should overlook many points essential to the symmetry and perfection of the work in hand. In consideration of these circumstances public policy and the demands of justice alike, require that their acts should be liberally construed to promote the objects contemplated, whenever the legislative intent can be clearly ascertained, and effect given the same, without violating well-established rules of construction.

In accordance with these views, the jurisdiction of the county court to entertain and try this cause upon the appeal will be sustained, and its judgment affirmed.

*Judgment affirmed.*