## Denver, South Park & Pacific R. R. Co. v. Moynahan.

1. The law contemplates that the minds of jurors shall be free from such impressions of the merits as amount to a conviction or prejudgment of the case.

2. Unless it clearly appears from the record that the requirements of the statute have been disregarded in the overruling of a challenge for cause, the ruling of the trial court should be sustained.

3. It is the privilege and duty of counsel to show up in their true light such acts and conduct of the opposite party as are deserving of criticism or condemnation, but he must not depart from the evidence for such purpose, and surreptitiously introduce before the jury irrelevant matters.

4. The statute does not allow interest upon a claim for unliquidated damages.

*Appeal from District Court of Park County.*

THE case is stated in the opinion.

Messrs. TELLER and ORAHOOD and B. M. and C. J. HUGHES, for appellant.

Mr. JOHN W. HORNER, for appellee.

BECK, C. J.    This case, in its essential features, is similar to the case of *The D., S. P. & P. R. R. Co. v. Conway,* (*ante,* p. 1,) decided at the present term.

It is an action by Moynahan against the railroad company for property destroyed by the explosion of giant powder in the depot of the defendant company at Red Hill.

We will only consider such alleged errors as were not passed upon in the former case.

It is assigned for error that the court overruled a challenge for cause to the competency of a juror named T. T. Willey. This juror stated, upon his examination, that he was present at a former trial of the cause, heard a portion of the testimony, and formed and expressed an opinion upon the merits.

The Civil Code makes it a ground of challenge for cause that a juror has *"formed or expressed an unqualified opinion or belief as to the merits of the action."*

Another ground for challenge for cause is: "The existence of a state of mind in the juror evincing enmity against, or bias to, either party."

The answers of Mr. Willey failed to show any disqualification upon the latter ground. He had no recollection of having expressed an unfriendly feeling towards the railroad company. Concerning the effect produced upon his mind at the former trial, and still existing, by the testimony which he had heard, his answers to counsel were rather indefinite and unsatisfactory. But to interrogatories propounded by the court, he answered positively that he would be governed by the evidence to be introduced on the trial, and that his former opinion would not control him in any way in making up his verdict. If able to do this he was a competent juror, since it did not affirmatively appear that he had formed or expressed an unqualified opinion as to the merits of the controversy.

The law contemplates that the minds of jurors shall be free from such impressions of the merits as amount to a conviction or prejudgment of the case. The rule is a plain and necessary one, but its application is often exceedingly difficult. This is owing to a variety of circumstances which arise in practice.

In the first place, there is a prevalent disposition on the part of that class of men best fitted by education and business experience to perform jury duty, to shirk that service. In order to evade it, they are not only willing to have it understood that some previous knowledge of the case has disqualified them from serving, but often strive to create such an impression by the character of their answers to questions concerning their competency.

Again, the nature and operations of the human mind vary greatly in different individuals. There are also great

differences in their moral tendencies and characteristics. Owing to these dissimilarities, it is often difficult to ascertain, upon the *voir dire* examination of a juror, what the condition of his mind is with respect to bias or prejudice, or what is the character of the impressions made by previous information as to facts involved. Some minds arrive at definite conclusions on slight evidence, while others are disposed to suspend judgment until all the facts are known. Some have greater capacity than others to discard previously received impressions or previously formed opinions. There is also to be noted a delicacy about stating positively under oath, that previous knowledge of facts, or previous impressions concerning the merits, would have no weight in making up a verdict. This observation is applicable to the more diffident and conscientious jurors.

To resolve all doubts raised as to competency in favor of the challenging party, would render it almost, if not quite, impossible in many cases to procure a full jury. It becomes a necessity, therefore, for the trial judge to retain all jurors who appear, upon examination, to be qualified under the law.

In view of the foregoing considerations, it is evident that the judge who presides at the trial, and in whose presence the jurors are questioned as to their competency, has superior opportunities for judging of their qualifications. He observes their appearance, manner, tone of voice and peculiarities, advantages for arriving at a correct judgment not possessed by a court of review, which has only the written report of the examination before it.

Our conclusion is that, unless it clearly appears from the record that the requirements of the statute have been disregarded in the overruling of a challenge for cause, the ruling of the trial court should be sustained.

It is not apparent that such an error was committed in the retention of the juror Willey, and the overruling of the challenge will be sustained.

It is assigned for error that plaintiff's counsel, in his closing address to the jury, commented upon matters not in evidence, and made statements concerning the disposition of the defendant company toward the citizens of Park county, all of which were calculated to prejudice the case of the defendant before the jury.

The comments upon matters not in evidence were as follows:

"Unfortunately, we read the direct examination of Colonel Fisher, and would we have read you the cross-examination, it would have pinched the boys — it would have pinched the boys; the cross-examination would —"

It does not appear, from the record, whether the counsel was checked at this point by the court, or interrupted by an objection from opposing counsel; but the fact that the last sentence was not finished shows an interruption, and that he was not permitted to state what the cross-examination of the witness disclosed.

The testimony referred to was that given by the witness Colonel Fisher, in the Conway case, which, by stipulation of counsel, was to be read in the present case. Only the direct examination, however, was read. Inasmuch as the counsel was not permitted to state what the unfavorable testimony was, we do not think the exception well taken.

The same observation is equally applicable to the allusion made to the testimony of the witness Colyer.

The other remarks of counsel excepted to were as follows:

"A railroad company says we will teach Park county a lesson. We will show them that it is a thing that must not be tampered with. When we destroy a man's property you had better say nothing. That is what a railroad company says. I have no feeling for a railroad company. I pay ten cents a mile or else I don't travel, and that is the way you find a railroad company charges."

This style of argument is too common in closely con-

tested cases, and especially so when a corporation is a party.   It is a covert way of introducing before the jury facts which are not in evidence, upon which to base a denunciation of the conduct of the opposite party, for the purpose of exciting sympathy for one side and prejudice against the other.   Such a course is both illegitimate and unprofessional.   It is a violation of the rule which confines counsel to the facts proven, and is an abuse of the privileges of counsel which merits severe censure.

It is the privilege and duty of a counsel to deal with the facts in evidence according to his view of the case. He may draw illustrations therefrom, or from facts hypothetically assumed, but he must not make himself a witness by stating facts within his own knowledge affecting the case.   It is his privilege and duty to show up, in their true light, such acts and conduct of the opposite party as are deserving of criticism or condemnation, but he must not depart from the evidence for such purpose, and surreptitiously introduce before the jury such irrelevant matters.

The conduct of counsel in the present instance was clearly reprehensible, but it is insufficient, under the circumstances of this case, to justify a reversal.   The instructions of the court were evidently designed, in part, to counteract whatever improper influence had thus been exerted.   The jury were told that, in deciding the issues, they must look solely to the evidence for the facts, and to the instructions of the court for the law.   Reference was made to the fact that one of the parties was a corporation, and they were instructed that it was their duty to decide the case precisely as if it was a controversy between two individuals.

Their attention was also particularly and repeatedly called to the facts which must be found duly proven, in order to entitle the plaintiff to a verdict.

We hold it to be the duty of courts to protect litigants

from unfair conduct of this character, but it would seem to be underrating the intelligence, and impeaching the honesty as well, of the jury in this case, to say that they may have been influenced to return a verdict for the plaintiff by the objectionable remarks of counsel which have been assigned as error.

Their verdict, although erroneous in a single particular, is sustained both by the testimony and the instructions.

The error committed was in the allowance of interest upon the property destroyed. As said in the Conway case, the statute does not authorize the allowance of interest upon claims of this character, and for this reason alone the judgment must be reversed. But, since the plaintiff below has filed herein a *remittitur* of all interest, it is ordered that judgment be entered in this court in favor of said plaintiff for the sum of $2,106, which sum is the amount of his damages as proved by the jury, less interest thereon, computed at the sum of $217.95, and that he recover his costs below as taxed. It is further ordered that the appellant recover costs in this court to be taxed, and that execution issue herein.

*Reversed.*