## JANUARY TERM, 1897.

### THE DENVER TRAMWAY COMPANY v. CRUMBAUGH.

1. EMPLOYER AND EMPLOYÉ.

As between employer and employé, the former is under duty imposed by law to furnish reasonably safe machinery and to keep the same in repair,—a duty the performance of which cannot be delegated to another so as to relieve him from responsibility.

2. SAME—FELLOW SERVANT.

Agents charged with the duty of procuring safe machinery, or with the duty of inspecting and keeping machinery and appliances in suitable repair, are not to be regarded as fellow servants with those employed to labor in the business wherein such machinery and appliances are used, or, in some cases, even with those engaged to operate the same.

3. SAME—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.

If a defendant in an action for damages sustained by his employé desires the jury to pass upon the question of contributory negligence, he should request a proper instruction with reference to that issue, otherwise a failure so to instruct may not be considered upon review.

*Appeal from the District Court of Arapahoe County.*

THIS action was instituted by Jennie Crumbaugh to recover damages resulting from the death of her husband, Thomas Crumbaugh, who was killed by an accident on the 25th day of November, 1892.

The complaint alleges that at the time of the accident Thomas Crumbaugh was engaged in the performance of his duty as conductor for The Denver Tramway Company, the defendant below and appellant here; that while so engaged he was caught and struck by a rapidly moving car, belonging to the defendant, and operated by it; that said accident was caused by the negligence of the defendant company, and that it resulted in his death. The complaint further alleges that the car which ran down upon the deceased was

unfitted for use, as a car to be run and controlled by electricity, on account of its great and unusual size; that said car was insufficiently equipped with brakes and braking appliances to stop or control its movements; and that said car was insufficiently supplied and insufficiently equipped with electrical machinery and appliances, and that for this reason its movements could not be directed or properly controlled; that said electrical machinery and appliances had become burnt and worn, and otherwise out of repair, so that they were at the time of the accident defective and utterly insufficient for the purpose to which they were applied, all of which facts were at all times known to the defendant, and that by reason whereof the car became unmanageable and ran down upon Crumbaugh, thereby causing the injuries and death complained of.

The answer of the defendant denies these allegations of the complaint in reference to negligence, and alleges that the injury and death of Crumbaugh was caused by his own negligence and that of his fellow servants. Upon these issues the cause was tried to a jury, the trial resulting in a verdict and judgment for the plaintiff in the sum of $5,000. The defendant appeals.

Mr. A. M. STEVENSON, for appellant.

Messrs. THOMAS, HARTZELL, BRYANT & LEE, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

In addition to the general verdict against the appellant company, seven interrogatories were submitted to the jury. From the evidence, as resolved by the jury in answer to these special interrogatories, it appears that the accident occurred as follows:

On the evening of the 25th day of November, 1892, Crumbaugh returned from his regular run to the end of the line,

this being the junction in North Denver, where the cars for Rocky Mountain lake and other localities start. At the time in question, the car of which Crumbaugh was conductor was standing upon the track, and he was engaged in switching the trolley in position to reverse the car for the return trip. He was at the time on the ground, and had walked around the side of the car to the end, and at the instant of the accident was placing the trolley upon the wire overhead. At this instant car No. 110, operated by the same company, was standing upon the track preparatory to starting in the opposite direction from the route upon which Crumbaugh's car was to return, the cars being then about eight feet apart. At the very instant when Crumbaugh's attention was directed to placing the trolley on the line overhead, the conductor on car No. 110 gave the signal of two bells, which indicated to the motorneer to go ahead. In response to this signal the motorneer applied the electrical switch in the customary way to propel the car forward, when, by reason of the switch being out of repair, the electricity operated in a reverse direction, causing the car to back down upon Crumbaugh as he was in the act of putting the trolley on the wire overhead, and crushing him to death between the bumpers of the two cars. The evidence further shows that the electric reverse switch on car No. 110 had been out of repair for some time previous; that on the night of the 24th day of November, 1892, the car was left at the repair shops of the company, and the persons then in charge notified that both the brake of this car and also the electric reverse switch were out of repair. Upon the following morning, to wit, the day of the accident, the car was turned out of these shops with the statement by the witness Truitt that it had been fully repaired, Truitt being at the time in the employ of the company as car repairer.

The appellant presents a lengthy argument to show that Truitt, who had charge of these repairs, was a coemployé with Crumbaugh in the service of the appellant company, and that for this reason the company is not liable for his

neglect to properly repair the electrical appliances of this car, which neglect caused the injury complained of.

It would serve no useful purpose to follow counsel through the conflicting decisions of the English and American courts upon the legal proposition contended for, for the reason that the question has been exhaustively considered by this court in many cases, and the law is now well settled in this jurisdiction that the duty of the company to furnish reasonably safe machinery and keep the same in reasonable repair is a duty imposed by law upon the company, the performance of which it cannot delegate to another so as to relieve itself from responsibility.

In the case of *Wells v. Coe*, 9 Colo. 159, it is said :

" Agents charged with the duty of procuring safe machinery, or agents charged with the duty of inspecting and keeping machinery and appliances in suitable repair, are not to be regarded as fellow servants with those employed to labor in the business wherein such machinery or appliances are used, or, in some cases, even with those engaged to operate the same. The master is liable for injuries resulting, without contributory negligence, to other servants, through the ordinary negligence of his employé or agent thus charged with the duty of procuring or repairing, whether such negligence be in originally failing to purchase safe machinery, or appliances, or in failing to keep the same in proper condition for use."

There is no contention in this case that Crumbaugh knew of the defects in the electrical appliances on car No. 110 ; and there is not the slightest evidence of facts or circumstances which would indicate that he had such knowledge. When this car was run into the repair shop on the night of the 24th of November, the duty to properly repair it was a duty resting upon the company, and a duty that it could not delegate to others. The law required at the hands of the company reasonable diligence in making the necessary repairs, and to see to it that the car did not leave the shops for service until such repairs were actually made. It does not

avail the defendant in this case that the car repairer (Truitt) swears that the car was in good condition upon the morning when it left the shops, because the jury found the fact to be otherwise upon all the evidence.  The doctrine announced in the case of *Wells v. Coe* has been reviewed and sustained by this court in a number of recent cases.  *Burlington & Colorado Railroad Company v. Liehe*, 17 Colo. 280; *Grant v. Varney*, 21 Colo. 329; *The Denver & Rio Grande Railroad Company v. Sipes*, ante, p. 226.

It is claimed by appellant that the court should have instructed the jury upon the question of contributory negligence, although no specific instruction was asked upon this subject.  A careful reading of the evidence in the case fails to disclose any facts or circumstances which would make the doctrine of contributory negligence applicable, for, although such a defense is set up in the answer, it does not appear to have been pressed upon the trial, and we do not think the question is in the case.  We have not overlooked the fact that one out of a large number of witnesses testified that car No. 110 was slowly moving toward the other car, by the force of gravity, at the time Crumbaugh was endeavoring to change the trolley.  All the other witnesses state that at this time car No. 110 had come to a full stop.  But Crumbaugh was not injured because the car was slowly moving down by force of gravity; but he was injured by the great momentum given to the car by reason of the reverse effect of the electricity, caused by the defective electrical appliances.  He had never used car No. 110, and had nothing to do with its management at the time of the accident, and we fail to see how he could have anticipated that when the electrical switch was turned for the car to go ahead it would run suddenly backward with great velocity.

Some of the witnesses testified that after passing around the side of the car he might have placed the trolley upon the wire from the back platform.  But this would have required him to have leaned out over the back railing of the car.  If he had attempted to make the change in this way, and his

back had been broken, by the coming together of the cars, it might then have been contended with greater force that he should have remained upon the ground. We think there is no evidence in the case tending to show contributory negligence on the part of Crumbaugh. Moreover, if appellant, at the time of the trial, desired the jury to pass upon such an issue, it should have tendered a proper instruction with reference to the same. It failed to do this, and we conclude that counsel then appearing for appellant did not rely upon the defense of contributory negligence.

Evidence was properly received as to the defective condition of the car prior to the day of the accident. Such evidence was competent for the purpose of showing knowledge on the part of the company of the condition of the car.

Finding no error in the record, the judgment of the district court will be affirmed.

*Affirmed.*