ANTONINO NOCITA, APPELLEE, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED MAY 6, 1911. No. 16,359.

1. Master and Servant: FELLOW SERVANTS. "Employment in the service of a common master is not alone sufficient to constitute two men fellow servants within the rule exempting the master from liability to one for injuries caused by the negligence of the other. To make the rule applicable there must be some consociation in the same department of duty or line of employment." *Union P. R. Co. v. Erickson*, 41 Neb. 1.

2. Carriers: INJURY: CONTRIBUTORY NEGLIGENCE: QUESTION FOR JURY. "Whether the act of a party in attempting to board a moving street car is negligence or not is generally a fact to be determined by the jury, taking into consideration all the circumstances in evidence in the case." *Omaha Street R. Co. v. Martin*, 48 Neb. 65.

3. Trial: NEGLIGENCE: QUESTIONS FOR COURT AND JURY. "It is for the court to say what act or omission is evidence of negligence, but generally it is for the jury to say whether the evidence establishes negligence." *Omaha Street R. Co. v. Martin*, 48 Neb. 65.

4. Carriers: INJURY: NEGLIGENCE. Even if the rule, sometimes announced, that the unbending test of negligence is the ordinary usage of the business in which defendant was engaged is the

**17**

law, it could have no application to the question of negligence growing out of a sudden and violent jerking and starting of a street car, by which a plaintiff was injured.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*Green, Breckenridge & Matters,* for appellant.

*James C. Kinsler, contra.*

REESE, C. J.

This is an action for damages resulting from a personal injury. Plaintiff recovered a judgment, and defendant appeals.

No serious question is presented as to the pleadings, and they will not be noticed, except to say that they are in the usual form, and the issues presented by the contentions of the parties will be sufficiently stated by the discussion of the points raised.

The evidence is, to some extent, conflicting, but when considered as a whole the conflict is more apparent than real. There was sufficient submitted to the jury to sustain a finding that, at the time of the accident plaintiff was in the employ of defendant as a laborer on the extension of defendant's line of street railway from Albright to Fort Crook, and in the group of workmen known as "spikers," whose duty it was to drive spikes into the cross-ties, and by which the track rails were held in place; that he and practically all the other laborers on the construction work resided in the cities of Omaha and South Omaha, and defendant provided a work train consisting of a motor car and flat car trailer, by which the men and materials were transported from the cities named to and from their work on the extension line; that on the morning of the accident plaintiff and another were standing on the street crossing waiting for the approach of the car, as was their custom; that, as the car approached the place where they were standing, plaintiff

signaled the motorman to stop, in order that he and the other person might board the car to be carried to their work; that there had been a rain that morning, or during the night before, and it was then cloudy, and plaintiff was carrying his dinner bucket and an umbrella; that, upon his signal being given, the motorman cut off the electrical current, or power, and applied the brakes, for the purpose of stopping the cars; that the cars were brought to nearly a full stop at the usual stopping place, when plaintiff sought to get on board, and in doing so caught hold of the upright prepared for that use and stepped with one foot upon the step of the car, when at that moment the power was applied and the car was jerked violently forward, throwing plaintiff under the car in such a way as to cause his lower limbs to come under the wheels, one leg being run over near the knee, and being so badly crushed and lacerated as to require its amputation above the knee, and the foot of the other being so crushed as to require the amputation of one of his toes. No question is raised as to the fact of the injuries, as above stated, nor as to the amount of the recovery, provided plaintiff is entitled to recover at all. By the answer, all negligence of defendant is denied, and it is alleged that "the injuries received by the plaintiff were directly caused by his own negligence in attempting to board its car while the same was in motion."

It is alleged in the petition that the speed of the car was "slowed down" as it approached and crossed Williams street, until it came to almost a stop at the usual stopping place on the south side of Williams street. The evidence all showed that the car had not entirely ceased its motion when plaintiff attempted to get on board, and such is conceded to be the fact. But there was sufficient evidence to sustain a finding by the jury that the car (or train, as it is called in the evidence) came almost to a full stop at the usual place for stopping cars to receive and discharge those who might desire to board or leave the cars, and that at the time plaintiff

sought to get on board the rate of speed was not to exceed one-quarter of a mile an hour, or one mile in four hours, which would scarcely amount to a movement—much less than one-half the speed an ordinary person would walk.

The question of the negligence of plaintiff in undertaking to board the car while so moving was submitted to the jury with appropriate instructions. There was also sufficient evidence to warrant the jury in finding that just at the moment when plaintiff took hold of the support and placed his foot upon the step, where the motorman saw or could have seen him, the cars were started forward with such a violent jerk as to dislodge those on board from their seats, and by its action pull or jerk plaintiff loose from his hold and throw him under the car wheels. This question of negligence on the part of defendant was also submitted to the jury with proper instructions. Thus we have the question of the negligence of both parties submitted to the jury.

After the close of the evidence, counsel for defendant moved the court to instruct the jury to return a verdict in favor of defendant, and assigned the following grounds therefor: "(1) That the testimony fails to show, and does not tend to show, that the injury to the plaintiff resulted from actionable negligence on the part of the defendant as the proximate cause thereof. (2) The testimony shows that the defendant's motorman, at the time of the accident to the plaintiff, was operating the motor train in the usual and customary manner. (3) The testimony shows that the plaintiff's conduct, in attempting to board the train before it came to a stop, was the proximate cause of his injury. (4) If neither defendant nor plaintiff were guilty of negligence proximately contributing to the injury, then the injury was itself an accident. (5) If said injury resulted from the negligence of Gillespie, such negligence was the negligence of a fellow servant of the plaintiff, and he cannot recover." (Gillespie was the motorman in charge of the car.)

As to the first ground for the motion, we have already said in substance, that what the testimony showed or failed to show as to negligence on the part of defendant was solely for the jury. The testimony of the witnesses, not entirely harmonious, was before them, and it was for them to decide. As to the second, it can hardly be said that the evidence showed conclusively that the motor train was operated in the usual and customary manner, even if the fact, if shown, would constitute an absolute defense, which we do not concede.

As to the third ground, no court could rightly hold that, as matter of law, under the circumstances as detailed by some of the witnesses, plaintiff was guilty of contributory negligence which was the proximate cause of his injury. If the facts were as detailed by some of the witnesses, he probably was not. It was for the jury to decide as to which theory of the facts was the correct one.

As to the fourth and fifth grounds, they clearly involved questions of fact which it was not the province of the court to decide. The motion was rightly overruled. Under the evidence, the cause presented questions of fact which could only be submitted to the jury for solution. If the evidence most favorable to plaintiff was believed by the jury, they were justified in finding that, under the circumstances, plaintiff was not guilty of negligence in his efforts to board the train, owing to its very slow movement, for, for all practicable purposes, it had come to a full stop, and but for the violent lurch or jerk forward he would have ben in no danger whatever, and therefore guilty of no negligence. This being true, the cases cited by defendant upon this point are not controlling.

It is insisted that the court erred in refusing to give to the jury instruction numbered 2 asked by defendant. The instruction is quite lengthy, and need not be set out here in full. We may assume that it was in part correct, yet other portions were inapplicable to the case. It was sought to have the jury instructed that, in order to justify a finding that "defendant, through its motorman, was

negligent in the operation and control of the motor car that ran over Nocita's leg, the plaintiff must establish, by a preponderance of the evidence, that the car was not operated as such cars and trains are ordinarily operated under similar circumstances and conditions; for the unbending test of negligence is the ordinary usage of the business. And the mere fact that an accident happened and the plaintiff received an injury does not raise any presumption that the defendant was negligent in the operation of its motor car and train." While the writer hereof takes little stock in the "unbending test" rule, as each case should be governed by its own facts and circumstances, yet, under no circumstances, could the so-called "unbending test" rule be applied to this case, even if it were a rational one, as there was no proof that the "ordinary usage of the business" was to apply the full force of the power just at the moment of time when plaintiff would be thrown from the car, as he was, and subjected to the danger of the injury, which he actually suffered. The question of the general operation and management of the train and cars was not in the case, and the cases cited do not apply.

Complaint is made of the refusal of the district court to give the fifth instruction asked by defendant. This instruction was a direction to return a verdict in favor of defendant, and contained the statement that plaintiff and the motorman were fellow servants; that defendant was not liable for the motorman's negligence, and the verdict should be in defendant's favor. There was no error in refusing this instruction. There is nothing in the evidence which proves that the motorman and plaintiff were fellow servants. Plaintiff, when at his work, was engaged in spiking down the rails. Gillespie, the motorman, was serving as lineman, putting up poles and wires at a distance from the track layers. True, they were the servants of the same employer, but they were not engaged in the same kind of labor. Plaintiff was under the foreman of the "gang" with which he labored, while Gillespie,

was at that time the foreman of the wiring gang. A part of his duties was to run the cars from Omaha to the place of disembarkation, but in this there was was no connection whatever with the transportation of plaintiff, such as to render them fellow servants. *Union P. R. Co. v. Erickson*, 41 Neb. 1, 13. "The plaintiff was not associated with defendant's motorman in running the car. His employment was in nowise connected with the operation of cars. For these reasons, plaintiff was not a fellow servant of the motormen." *Haas v. St. L. & S. R. Co.*, 111 Mo. App. 706, 715, 90 S. W. 1155, 1157.

It is insisted that the court erred "in applying the so-called 'last chance' doctrine to the facts of this case, and the misstatement of that rule." In this connection reference is had to the tenth instruction given to the jury. That instruction is too long to be here copied. Its substance is that if, in considering the question of the contributory negligence of plaintiff, such negligence would not necessarily prevent a recovery, if, after placing himself in a place of danger, the motorman saw or might have seen him and negligently failed to stop the car, or negligently started it with a jerk while plaintiff was so situated, such negligence was the proximate cause of plaintiff's injury. As hereinbefore stated, the car in which plaintiff sought passage had practically come to a stop at the time he attempted to board it. There was perhaps no negligence on his part in making the attempt. At any rate, the question was for the jury to decide. *Omaha Street R. Co. v. Martin*, 48 Neb. 65. There is practically no dispute but that, at the time plaintiff made the effort to enter the car, the train was sent violently forward with such force as to break the hold of plaintiff and throw him under the wheels of the car. The jury must have found, and rightly too, that the act of the motorman was one of negligence—a needless, careless, affirmative act, by which the life of plaintiff was endangered. If any objection to the instruction could be maintained, it would be that it was more favorable to defendant than the facts war-

ranted. However, the instruction was evidently given to cover the case as contended for by defendant, and does not contain a misstatment of the law to its prejudice. It was properly given. *Omaha Street R. Co. v. Martin*, 48 Neb. 65, 71.

We find no error in the record prejudicial to defendant, and the judgment of the district court is

AFFIRMED.