[No. 6493.]

RIO GRANDE SOUTHERN RAILROAD CO. V. NICHOLS.

1. MASTER AND SERVANT—*Who Are Fellow-Servants*—The foreman of a party engaged in repairing a railway bridge is not a fellow-servant with the brakeman upon one of the railway trains. He is the representative of the company, and if by his want of ordinary care in the premises the brakeman comes to harm, the railway company is responsible—(304, 305).

2. ———*Duty of Master as to Place of Work*—A railway company is under duty towards those who operate its trains to use ordinary care to make its tracks reasonably safe.

This duty cannot be delegated so as to exonerate the company—(305).

3. JURY—*Challenge for Cause*—In forming a. jury to try an issue of fact the court exercises a wide discretion. The denial of a challenge will not be disturbed unless some positive statute has been violated, or the court has abused its discretion.

And it must affirmatively appear that the complaining party has exhausted his peremptory challenges—(307).

4. TRIAL—*Directing Verdict*—Where, in an action for negligence, the uncontradicted testimony, even that presented by the

defendant, establishes the charge, the court may direct a verdict for plaintiff, submitting only the question of damages—(306).

5. BILL OF EXCEPTIONS—*Where Necessary*—The jury list required by Mills' Code, sec. 185 (Rev. Code, sec. 202), is no part of the record. Even though copied into the transcript sent to this court, it will not be regarded—(308).

6. EVIDENCE—*Mortuary Tables*—Where in an action for personal injuries there is evidence that the disability complained of is permanent the mortuary tables prescribed by secs. 2490-2491 Rev. Stat. are admissible to establish the plaintiff's expectancy of life.

The tables are not conclusive, but are to be considered in connection with other evidence as to the health, habits and condition of the injured party—(309).

7. DAMAGES—*Personal Injuries*—Plaintiff sustained permanent injuries, through the negligence of defendant. He was but twenty-five years old, in good health, and earning from $115 to $125 monthly. A verdict of $14,000 was held not to indicate that the jury had misapprehended the testimony, or were influenced by prejudice, or any improper consideration—(307).

*Appeal from Ouray District Court.*—Hon. Sprigg Shackleford, Judge.

Mr. E. N. Clark, Mr. J. G. McMurray, Mr. Carl J. Sigfrid and Mr. Thomas L. Philips, for appellant.

Messrs. Story & Story, for appellee.

Mr. Justice Garrigues delivered the opinion of the court::

1.   August 25, 1906, plaintiff Nichols, was braking on a freight train of the defendant, The Rio Grande Southern Railroad Company, and while crossing the Dolores river, the bridge collapsed, and he, with seven freight cars and the caboose in which he was riding, was precipitated into the gulch below, severely injuring him. The complaint alleges defendant negligently failed to maintain a reasonably safe road-bed and track across the

river on which to run its trains; that it negligently main-
tained the bridge upon which the track was laid across
the river; that it negligently failed to keep the bridge in a
reasonably safe condition, and negligently permitted the
timbers, piling and other materials used in the construc-
tion of the bridge, to become unsafe, insecure, unsound
and decayed; which negligence caused the accident. The
answer admits the bridge collapsed, and plaintiff, with the
caboose in which he was riding, was precipitated into the
gulch below; but denies that its negligence caused the
accident, and alleges the negligence, if any, was that of a
fellow servant or servants of the plaintiff in the perform-
ance or attempted performance of their duties as employes
of the defendant, or in the failure to perform the duties
incumbent on them as fellow servants of the plaintiff and
servants of the defendant.

The verdict and judgment was for the plaintiff, and
the case is here on appeal.

2. The bridge was a five bent, double deck, pile
structure, about three hundred feet long and sixty feet
high. The middle bent was directly over the stream, and
some, if not all the piling on which it rested, stood in the
water, the surface of which was about twelve feet below
the top of the piling. There were three sets of braces
lying in parallel planes, running through the bridge
lengthwise from end to end, one set at the top resting on
the caps, one at the bottom supported by the piling, and
the other, called line girts, extending through the middle
of the bridge, resting on and spiked to the intermediates.
The lower or first deck of the bridge rested on sills sup-
ported by the piling, and next came the intermediates on
which rested the top or second deck. One purpose of the
braces running through the bridge lengthwise from dump
to dump, was to hold it together and keep it from buck-

ling.   The middle set of braces resting on the interme-
diates between the two decks, consisted of six line girts
extending throughout the length of the bridge.   The piles
on which the middle bent rested, were white spruce, and
had been in the ground about fifteen years without being
replaced.   The evidence disclosed that the life of this
timber, under such conditions, is about five years.

About three weeks before the accident, a bridge
crew, under the direction of a bridge foreman named
Hemingway, began repairing the bridge under written
and verbal instructions from the superintendent.   On the
day of the accident, he had completed the work up to and
including the middle bent.   It was his intention to take
out and replace the intermediates in the adjoining bent
after dinner, which necessitated the removal of the line
girts between the bents.   These girts, it will be remem-
bered, were the middle set of braces that kept the bridge
from buckling under the weight and vibration of trains.
Just before starting to dinner, he removed these line girts,
and in their stead, spiked on either side a heavy plank
to the outside of the batter posts between these bents.
While the workmen were at dinner, and about ten min-
utes after twelve o'clock, the freight attempted to cross
the bridge, which gave way.   The undisputed evidence
shows that two of the piles of the middle bent were so
rotten that they would mush and crumble in the hand,
and a third was very rotten.

Two theories were advanced on the trial as to the
cause of the accident, that of the plaintiff being that it
resulted from the rotten condition of the piling; while
the defendant contended this was not the cause, but that
the accident was due to the negligence of Hemingway in
removing the line girts without supplying proper and nec-
essary supports in their place.

. The timbers of the upper deck fell to the north, while those of the lower deck fell south, indicating, it is said, that the decks had doubled up or "jack-knifed," as the witnesses expressed it.

3. The principal controversy arises over whether the bridge foreman, in repairing the bridge, represented the company, or whether, as to the plaintiff, he was a fellow servant in the operation of the train. In other words, were Hemingway and the plaintiff engaged in operating the road, or did Hemingway represent the defendant in maintaining a reasonably safe place for those engaged in its operation, to work. The lower court held that he was not a fellow servant of the plaintiff, but an agent of the company, to whom was delegated the performance of a duty it owed to its employes. It instructed the jury in substance, that it was the duty of the defendant to keep the bridge in a reasonably safe condition for the passage of trains; that the defendant could not escape responsibility for a discharge of this duty by delegating it to a bridge foreman or other employe; that employes engaged in repairing the bridge, as regards their relations to the plaintiff, were representatives of the company, and if they were guilty of negligence, it was the negligence of the company. Defendant objected to this, and asked the court to instruct, if the jury found that the cause of the accident was the negligence of the bridge foreman in repairing the bridge, or the negligence of any member of the bridge gang, or the joint negligence of the foreman and any member of the gang, then the plaintiff's injury was caused by the negligence of a fellow servant, and defendant would not be liable. In support of this position defendant's witnesses testified that the negligence of the bridge foreman caused the accident, and it is con-

tended here that the fellow servant doctrine applies in this case.

4. The lower court rightly held that the bridge foreman was not a fellow servant of the plaintiff. It was the duty of the defendant to use ordinary care to provide and maintain a reasonably safe place for the plaintiff to work. Operating the train across the bridge was a part of his work. If it delegated this duty to a bridge foreman, he was, for that purpose, the agent or representative of the company, and his negligence was the negligence of the company. Trains generally are operated by employes who are, in that work, fellow servants of those engaged in the work of operation. This kind of work may be, and usually is assigned or delegated to employes who, while working in that capacity, are not agents or representatives of the company. But the work of constructing, maintaining, furnishing, repairing, superintending, controlling, directing and managing its business, as distinguished from the work of operation, is non-assignable, and if delegated to another, makes him, in that respect, the representative of the company, and his failure to use ordinary care, while acting in such representative capacity, is negligence on the part of the company.— *Wells v. Coe,* 9 Colo. 159; *Denver T. & G. R. Co. v. Simpson,* 16 Colo. 55; *Colo. Midland Ry. Co. v. O'Brien,* 16 Colo. 219; *Moffat v. Tenney,* 17 Colo. 189; *Burlington & Colo. R. R. Co. v. Liehe,* 17 Colo. 280; *Colo. Midland Ry. Co. v. Naylon,* 17 Colo. 501; *Grant v. Varney,* 21 Colo. 329; *Deep Mining Co. v. Fitzgerald,* 21 Colo. 533; *D. & R. G. R. R. Co. v. Sipes,* 23 Colo. 226; *Denver Tram. Co. v. Crumbaugh,* 23 Colo. 363; *Colo. M. & E. Co. v. Mitchell,* 26 Colo. 284; *D. & R. G. R. R. Co. v. Sipes,* 26 Colo. 17; *Carleton M. & M. Co. v. Ryan,* 29 Colo. 401; *Tanner v. Harper,* 32 Colo. 156; *Poorman*

*Silver Mines v. Devling*, 34 Colo. 37; *McKean v. Colo. F. & I. Co.*, 18 Colo. App. 285; *Roche v. D. & R. G. R. R. Co.*, 19 Colo. App. 204; *Northern Pac. R. R. Co. v. Herbert*, 116 U. S. 642; *Baltimore & Potomac R. R. v. Mackey*, 157 U. S. 72; *Choctaw, Oklahoma & R. R. Co. v. McDade*, 191 U. S. 64; *U. P. Ry. Co. v. Daniels*, 152 U. S. 684; *Louisville & N. R. Co. v. Ward*, 61 Fed. Rep. 927; *Weeks v. Scharcr*, 111 Fed. Rep. 330; *Swensen v. Bender*, 114 Fed. Rep. 1; *Sadowski v. Car Co.*, 84 Mich. 100.

5. Defendant having taken the position and introduced evidence that the accident was caused by the negligence of its bridge foreman, and the court having properly found that he was not a fellow servant of the plaintiff but a representative of the company, nothing remained in the case but the question of damages. There was no conflict in defendant's evidence. Its witnesses were called for the purpose of proving, and they testified, that the negligence of the foreman in repairing the bridge, was the cause of the accident. This relieved the court from any necessity of instructing that defendant was only obliged to use ordinary care in repairing the bridge, because negligence is the lack of ordinary care, and defendant admitted and proved its negligence. The court could, without error, have directed a verdict for the plaintiff, and submitted to the jury the question of damages only. —*Mageon v. Alkire*, 41 Colo. 339; *Pedroni v. Epstein*, 17 Colo. 424.

It follows that any error in the instructions, or admission or rejection of evidence, except on the question of damages, is harmless. The jury in no event could rightfully have returned a verdict for the defendant. Cases are not reversed on harmless error. The evidence of the defendant alone sustains the finding of the jury for

the plaintiff.—*Ingemarson v. Coffee,* 41 Colo. 407; *United Oil Co. v. Roseberry,* 30 Colo. 184; *Peck v. Farnham,* 24 Colo. 141; *Haley v. Elliott,* 20 Colo. 379; *Allen v. Swadley,* 46 Colo. 544.

6. The verdict for $14,000.00, is undoubtedly large; but when we consider plaintiff was but twenty-five years of age; that his life expectancy was thirty-seven years; that he had always been in good bodily health; that his average earnings were from $115.00 to $124.00 per month; and that there was evidence from which the jury might properly find that his injuries were permanent; it does not seem that the verdict is so large as to make it apparent that the jury was influenced by prejudice, misapprehension of the evidence, or corrupt or improper considerations.—*Colo. Springs E. Co. v. Soper,* 38 Colo. 126.

7. Error is assigned on the overruling of defendant's challenge to juror Doelz. The forming of a jury to try an issue of fact rests largely in the discretion of the trial court. If the examination leaves the competency of the juror in doubt, the ruling of the court will not be disturbed. Before this court will interfere, it must appear that some positive statute has been violated, or that the court has abused its discretion. We will not attempt to set out the examination of the juror. It is sufficient to say that it does not disclose that any statute was violated, or that the court abused its discretion.—*Collins v. Burns,* 16 Colo. 7; *Denver Co. v. Driscoll,* 12 Colo. 520; *Denver Co. v. Moynahan,* 8 Colo., 56.

There is another reason why this assignment cannot be sustained. In order to be considered, it must affirmatively appear from the record that the challenging party exhausted all its peremptory challenges.—*United Work-*

*men v. Taylor,* 44 Colo. 375; *Blackman v. Edsall,* 17 Colo. App. 429.

In jury trials at common law, the record proper, or judgment roll, consisted of the summons and return, the pleadings, the verdict, and the judgment. Our code provides, section 185,

" * * * when the challenges for cause shall have been completed, and there shall remain on the panel eight jurors more than the number who are to compose the jury, the clerk shall make a list of those so remaining, in the order in which their names were called and hand the same to the plaintiff, who shall designate thereon the name of one juror peremptorily challenged by him, and hand the list to the defendant, who shall designate the name for one juror peremptorily challenged by him, and return the list to the plaintiff, and the parties shall so proceed alternately to challenge until the peremptory challenges shall be exhausted or waived, when the clerk shall call the remaining names, or so many of them as shall be necessary to constitute the jury in the order in which they appear on the list, and the persons whose names are so called shall constitute the jury."

The jury list used in forming the jury in this case, with the challenges thereon, is not incorporated in the bill of exceptions. There is nothing in the bill showing that defendant used all its peremptory challenges. In the clerk's transcript of the record appears what purports to be such a jury list with the peremptory challenges thereon. But our statute has not added to the record proper, the jury list used in the formation of the jury. Therefore it does not appear from the record that defendant exhausted its peremptory challenges. A paper improperly inserted in the record by the clerk, constitutes no part of the record and will not be considered.—*Wike v. Camp-*

*bell;* 5 Colo. 126; *Rutter v. Shumway,* 16 Colo. 95; *Commissioners v. 1st. Nat. Bank,* 8 Colo. App. 371; *Van Duzer v. Towne,* 12 Colo. App. 4; *Patrick v. Weston,* 21 Colo. 73; *German Nat. Bank v. Elwood,* 16 Colo. 244; *Fryer v. Breeze,* 16 Colo. 323.

8. Error is assigned on the ruling of the court admitting in evidence the mortuary table contained in sec. 2491 Revised Statutes of Colorado. It is claimed the table only applies in cases of this kind where the injury is fatal. Section 2490 reads in part: "In all civil actions * * * where it shall be necessary to establish the expectency of continued life of any person from any period of such person's life, whether he be living at the time or not, the table * * * shall be received in evidence." This section expressly provides that when it is necessary to establish the expectency of continued life of any person, *whether he be living or not,* the table shall be received in evidence. The admissibility of the table depended upon whether it was necessary to establish the expectency of continued life of the plaintiff. Plaintiff was twenty-five years of age, and if his injury was permanent, in order to arrive at the damages on account of loss of earning capacity, it was proper for the jury to consider the number of years he was likely to live. The evidence regarding the permanency of the injury, was conflicting. There was evidence from which the jury could find that his injuries were permanent, therefore, it was proper to admit the table. The law is, if there is evidence from which the jury may find that the injury is permanent, the table is admissible. If the jury finds it is permanent, the table is not conclusive, but may be considered together with other evidence as to health, habits, condition, etc., of the injured party, in arriving at the

damages.—13 Cyc. 199; Voorhees on Measure of Damages, sec. 60.                                   *Affirmed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE BAILEY concur.

Decided February 5, A. D. 1912.   Rehearing denied May 6, A. D. 1912.