EDGAR WENQUIST, APPELLEE, v. OMAHA & COUNCIL BLUFFS
STREET RAILWAY COMPANY, APPELLANT.

FILED JANUARY 2, 1915. No. 17,944.

1. **Evidence: RES GESTÆ.** The statement by a party to an accident,
of a fact directly connected with the accident as a cause thereof,
and made contemporaneously with the occurrence, is competent
as a part of the *res gestæ*, if such fact is within the knowledge
of the party making such statement, but is not competent as
evidence of a disconnected fact not within his personal knowledge.

2. **Master and Servant: INJURY TO SERVANT: LIABILITY.** If an em-
ployee, who is himself without negligence, is injured by the neg-
ligence of his employer, under such circumstances that the injury
would not have occurred but for such negligence, the contributory
negligence of a fellow servant will not prevent a recovery.

3. ———: ———: ———: **SUFFICIENCY OF EVIDENCE.** The principal
question submitted to the jury was whether the defendant's in-
spectors misplaced the "controller" which was the primary cause
of the accident, and the evidence was of such a nature as to
justify submitting this question to the jury.

4. ———: ———: **INSTRUCTIONS.** The answer alleged that the party
complained of as guilty of negligence was a fellow servant, but
denied that he was guilty of negligence. The instructions plainly
submitted both questions to the jury. Taking the whole case
together, the jury could not have been misled by a recital in one
of the instructions that "the defendant having plead that the
injuries complained of were caused by the act of a fellow servant."

5. ———: ———: ———: **FELLOW SERVANT.** An error in defining
"what constitutes a fellow servant" is immaterial, if, under the
undisputed evidence in the case, that relation did not exist and
the jury have so found.

6. **Appeal: VERDICT: EVIDENCE.** Unless the evidence is so deficient that
it appears from an examination of the whole record that the verdict
must have been produced by passion or prejudice or some in-
fluence outside of the evidence, in other words, that the verdict
is clearly wrong upon the questions of fact presented, this court
cannot control the action of the jury.

APPEAL from the district court for Douglas county:
LEE S. ESTELLE, JUDGE. *Affirmed.*

*John L. Webster* and *W. J. Connell,* for appellant.

*Sullivan & Rait, contra.*

SEDGWICK, J.

The plaintiff, a motorman in the employ of the defendant company, was injured while in that employment, and brought this action in the district court for Douglas county, alleging that the injury was caused by the negligence of this defendant. There was a verdict and judgment in his favor, and the defendant has appealed.

It appears from the evidence that the defendant maintains a car barn in the city of Omaha, in which from 70 to 80 cars are placed for the night. In the early morning, as his duty was, the plaintiff went to the car barn, ascertained the car that he was to take out that morning, and was preparing to do so. At the same time, another motorman, named Mace, was about to take out his car, which stood behind plaintiff's car about eight feet distant. Mace "turned on the overhead electric connection," and his car immediately started rapidly forward, catching plaintiff between the two cars, which caused his injury. There are several car inspectors or repairers, employed by the defendant, whose duty is to inspect and repair, when necessary, the cars in the barn during the night. These inspectors or repairers are under the control of a barn foreman. The plaintiff alleged that, during the nighttime, one of the inspectors inspected the car which was operated by Mace that morning, and "carelessly and negligently left the car standing with the safety lever thrown so that the car might be started when connected with electricity, and carelessly and negligently left the controller thereof set for a forward movement;" that Mace believed that the safety lever and controller were in a position of safety, and so connected the electricity which caused the accident. When the accident happened, plaintiff asked the motorman, Mace, "What were you trying to do?" and he answered, "The damned inspectors left the controller turned on." Defendant's counsel objected to this answer, and the court

at first struck it out, but afterwards, upon a repetition of the question, the same answer was made, and the court overruled the defendant's objection thereto.

It is now insisted that this evidence was incompetent, and that the court erred in allowing it. The controversy at that point was whether the inspectors had misplaced the controller, as plaintiff alleged, or whether the motorman, Mace, had misplaced it. The statement objected to asserted three things: That the controller was turned on; that Mace did not turn it on himself; and that the inspector did. As to the first two, the evidence was competent as a part of the *res gestæ*. The witness Mace at the time was in possession of full knowledge as to whether the controller was turned on at the time that he applied the electricity, also as to whether he himself turned it on; and this statement immediately at the time of the accident should be considered by the jury upon those two important features of the case. It was not error, therefore, to refuse to strike it out. But the motorman had no knowledge as to whether the inspectors, or the foreman of the car barn, or possibly some trespasser, misplaced the controller. None of these could have had any part in the *res gestæ*, and the statement was, of course, incompetent as evidence of such matters. The court should have instructed the jury that this statement was not to be regarded as evidence that the inspectors of the company had turned the controller on, and no doubt would have so instructed the jury if there had been a request for that purpose. No such instruction was requested. The defendant cannot, therefore, rely upon this ruling as prejudicial error.

There is much discussion in the briefs as to whether the inspectors were fellow servants with the motormen. It appears, however, to be conceded that the two motormen were fellow servants. The plaintiff testified that he had been in the service of the company as motorman for several months; that he had a copy of the rules of the company, and that, under rule 10 of the company, it was the duty of the motorman to inspect the car before starting it and see whether it was in first-class condition; and that

they were also "expressly required to look the car over to see that brakes, fenders, and controllers were all in good order." Rule 10 of the company was also in evidence, and it provides: "After signing for their runs and having procured the necessary supplies, conductors and motormen will proceed to inspect the car and see that it is in first-class condition. * * * The motormen will look the car over to see that brakes, fenders, and controllers are all in good order." The plaintiff also testified that Mace, before turning on the electricity, went into the vestibule of the car, and was standing in the vestibule in front of all the mechanism when he turned on the electricity. He was then asked this question: "And was all there where he could put his hand on it, even if it were as dark as Egypt, and tell whether the power was turned off or whether the reverse was on or off, couldn't he? He could tell that from the feeling of it, if he wanted to? A. Yes, sir." If we consider that, under the rule of the company and the circumstances disclosed by this evidence, the motorman, Mace, was guilty of negligence in turning on the overhead electricity without knowing that the controller was in place, will such contributory negligence on the part of a fellow servant prevent a recovery? The question has been answered in the negative by this court. In *Van Horn v. Cooper & Cole Bros.*, 88 Neb. 687, 696, it is said: "The law appears to be well settled that, if the injured servant was free from contributory negligence, the master would be liable where such injury was caused by the concurrent negligence of the master, or his vice-principal, and of a fellow servant. 26 Cyc. 1302, and cases cited in notes." The note referred to cites a large number of cases in the various states which seem to establish this rule beyond further controversy.

The defendant contends that the car inspectors and the motormen were fellow servants, and that the plaintiff cannot recover for an injury caused by the negligence of the car inspectors. The question is presented at great extent in both briefs. It is frequently difficult to apply the fellow-servant doctrine. In this case, however, it seems there

can be little doubt. The car inspectors were under the direct control of the car barn foremen. These foremen had no control whatever over the motormen. The motormen reported to the superintendent and were under his direction. In *Nocita v. Omaha & C. B. Street R. Co.*, 89 Neb. 209, it was said: "To make the rule applicable there must be some consociation in the same department of duty or line of employment." The motormen and inspectors were not engaged in the same duties. Indeed, there was no consociation of duties between them. The plaintiff cites *Denver Tramway Co. v. Crumbaugh*, 23 Colo. 363, *Cincinnati, H. & D. R. Co. v. McMullen*, 117 Ind. 439, and *McDonald v. Michigan C. R. Co.*, 132 Mich. 372, which are similar cases and seem to be in point.

The trial court instructed the jury that, unless they found that "one of the inspectors of defendant, during the night and prior to the accident, carelessly and negligently left the car, which moved up to and against the plaintiff, to stand with the safety lever thrown so that the car might be started when connected with electricity, and carelessly and negligently left the controller thereof set for a forward movement, so that, when the overhead connection was made, the car started forward and crushed and injured the plaintiff," they must find for the defendant. This instruction followed the allegation of the petition, which was that the acts of negligence of the inspector "were the sole and exclusive cause of the injuries received by the plaintiff." It is contended that the evidence will not justify the finding of the jury that the inspectors left the controller out of place. It appears that there were two inspectors employed in this car barn on the night in question. One of them testified that there were 75 or 80 cars in the barn; that these cars stood upon 10 different tracks; and that their duties did not require them to inspect all of these cars, but only such as had been reported for inspection. The evidence is that these cars are left at night close together. The two cars were about eight feet apart, as the motorman found them on the morning of the accident. The evidence tends to show, and the jury might have found

from the evidence, that the motorman, Mace, did not misplace the controller. The barn is not a public place; it is under the exclusive control of the defendant during the night, and every one is excluded except the inspectors and the foremen of the barn. Misplacing this controller was the negligent act which was the primary cause of the injury. If this was not done by the motorman, Mace, it must have been done either by the motorman who brought the car to the barn the night before or by the car inspectors. The motorman who brought the car into the barn was not called as a witness. He was in the employ of the defendant, and presumably, if he left this controller misplaced, the defendant would have proved that fact by him. These circumstances pointed directly to the inspectors as the parties who misplaced this controller. The defendant attempted to rebut this presumption. One of the inspectors testified that he did not think that he had anything to do with the car that night, but he testified that he thought the car in question stood on track No. 3, and was the third car north from the door. There was evidence that the car in question was on track No. 2, and that it was the second car from the door. The inspector also testified that he could not remember what cars he examined; that he probably examined 35 or 40 cars. He could not remember whether he moved some of them or not, but that it was sometimes necessary to move them. The other inspector was also a car repairer, and was in reality an assistant to the principal inspector. His testimony is a little more definite in regard to whether he had anything to do with the car in question, but is not so direct and positive as to remove all doubt upon that matter. Upon the whole case, the evidence that these inspectors misplaced this controller is not clear and satisfactory, but we cannot say that the verdict of the jury is so wholly unsupported on this point as to require us to reverse their finding.

The fourth instruction given by the court recites that "the defendant having plead that the injuries complained of were caused by the act of a fellow servant." This is not strictly accurate. The defendant did not plead that

the injuries were caused by the act of a fellow servant; but, while denying that the inspectors were guilty of negligence which caused the injury, the answer contained the allegation that the inspectors and motormen were fellow-servants. It is complained that this recital in the instruction is inconsistent with a subsequent clause in the same instruction which submitted to the jury the question of negligence of the inspectors. It does not appear that the jury could have been misled by this inaccurate recital in the instruction. Taken altogether, the instruction was plainly that it was contended by the defendant that the action was not due to any carelessness of the inspectors, and that question was fairly submitted to the jury.

It is also complained that the same instruction "incorrectly defined what constitutes a fellow servant." It is not necessary to discuss this instruction in that respect, since under the circumstances in this case the court might have instructed the jury that the motorman and inspectors were not fellow servants.

The questions of fact involved in this case are peculiarly within the province of the jury. This court is not authorized to retry those questions. Unless the evidence is so deficient that it appears from an examination of the whole record that the verdict must have been produced by passion or prejudice or some influence outside of the evidence, in other words, that the verdict is clearly wrong upon the questions of fact presented, this court cannot control the action of the jury.

The judgment of the district court is

AFFIRMED.

LETTON, ROSE and FAWCETT, JJ., not sitting.