**In re: Elizabeth JOHNSON, Plaintiff,**

**v.**

**Charlotte TRUJILLO and Martin McNicholas, Defendants.**

**No. 98SA451.**

Supreme Court of Colorado, En Banc.

May 10, 1999.

---

12. *See supra* note 2 and accompanying text.

likely experience in similar circumstances, Johnson has not impliedly waived her statutory physician-patient and psychotherapist-client privileges to keep these sensitive records private. Therefore, we now make the rule absolute.

## I. FACTS AND PROCEEDINGS BELOW

This case arises from a motor vehicle accident that took place in Lakewood on November 26, 1994. Johnson alleges that she was forced to stop her vehicle in traffic when McNicholas spilled a load on the roadway, and at that time, she was rear-ended by a vehicle driven by Trujillo. Johnson claims that she sustained injuries to her head, neck, back, left wrist, and left shoulder caused by Respondents' negligence. Johnson also claims that she now suffers numbness in her left extremities and headaches as a result of the car accident. In addition to compensation for medical expenses and permanent injury, Johnson seeks damages for mental anguish, emotional distress, pain and suffering, and loss of enjoyment of life.

On July 26, 1998, Respondents conducted a deposition of Johnson. In response to questions concerning the emotional distress that she had suffered as a result of the accident, Johnson stated that the accident had been "very upsetting" and "extremely emotional and scary." She further testified about her concern for other people involved in the accident and for herself because she was experiencing tingling symptoms. She stated that during the evening on the date of the accident, she realized that she had blacked out during part of the accident. Johnson also testified that she fainted a week after the accident, and her doctor told her at that time that he believed she had a concussion.

Johnson, who apparently had previously had surgery for cancer, expressed her fear about having to "go under the knife again" for neck surgery as a result of the injuries she sustained in the accident. She testified that she did not like the idea of someone cutting into her neck and that following the surgery, she would be required to wear a collar to immobilize her neck for eight weeks, which would restrict her activities. Addition-

Stephen P. Holmes, Denver, Colorado, for Petitioner.

Rodman & Ross–Shannon, Bradley Ross–Shannon, Denver, Colorado, for Defendant Trujillo.

Anstine, Hill, Richards & Simpson, Michael S. Simpson, Denver, Colorado, for Defendant McNicholas.

Justice BENDER delivered the Opinion of the Court.

Petitioner Elizabeth Johnson is a plaintiff in a personal injury case against Respondents/Defendants Charlotte Trujillo and Martin McNicholas arising out of a motor vehicle accident that occurred in November 1994. Upon Trujillo's motion, the trial court ordered that records concerning Johnson's ongoing psychiatric care and previous marriage counseling be disclosed. We issued a rule to show cause. As a matter of first impression, we hold that by making generic claims for damages for mental anguish, emotional distress, pain and suffering, and loss of enjoyment of life that are incident to her physical injuries and that do not exceed the suffering and loss an ordinary person would

ally, Johnson stated that the prospect of the surgery made her afraid for her son and was "really tough." She further explained that because of the physical pain she had experienced in the years since the accident, she had been forced to cancel many outings with her son, which made him sad and was hard for the energetic, young boy to understand.

During the deposition, Johnson also testified that she and her husband separated and filed for divorce in January 1998 and that the divorce had been finalized on July 9, 1998. Johnson stated that prior to the divorce, she and her ex-husband had received counseling from a marriage counselor. Johnson characterized the period of her divorce as "emotional" and "not a very fun happy time."

Johnson further testified in her deposition that she was seeing a psychiatrist, that this psychiatrist was treating her for depression, and that she was taking an antidepressant medication which she had started taking a year and a half earlier.

Trujillo filed a motion to compel production of various records concerning Johnson, including records of her treatment with her psychiatrist and records from her marriage counseling sessions with her ex-husband. Trujillo argued that Johnson had impliedly waived her physician-patient and psychotherapist-client privileges because she had injected her mental condition into the case by claiming damages for mental anguish, emotional distress, pain and suffering, and loss of enjoyment of life. In response, Johnson argued that she had not impliedly waived her privileges merely by making these ordinary damage claims. She asserted that: (1) she was not alleging that the accident had caused her to suffer from a "mental condition"; (2) the treatment and counseling she had received from her psychiatrist and marriage counselor was related to her depression and divorce and not to the accident; (3) she was not seeking compensation for any of this treatment from the Respondents; and (4) she did not intend to call either the psychiatrist or the marriage counselor to testify in the case. Arguing that divulging the records

would cause her substantial harm, Johnson asked the trial court to issue a protective order concerning her treatment and counseling records.

The trial court ordered Johnson to produce the records, and we issued a rule to show cause, which we now make absolute.

## II. ORIGINAL JURISDICTION

■ This court has original jurisdiction under C.A.R. 21 to review whether a trial court abused its discretion in circumstances where a remedy on appeal would prove inadequate. *See Kourlis v. District Court,* 930 P.2d 1329, 1330 n. 1 (Colo.1997). Here, if records of Johnson's psychiatric treatment and marriage counseling sessions "are indeed protected from disclosure by statutory privileges, then the damage to [her] will occur upon the disclosure of the records and regardless of the ultimate outcome of any appeal from a final judgment." *Clark v. District Court,* 668 P.2d 3, 7 (Colo.1983). Therefore, we find it appropriate to address the validity of the trial court's order in this original proceeding. *See id.*

## III. ANALYSIS

### A.

■ We begin our analysis with a discussion of two distinct but closely related statutory privileges: the physician-patient privilege [1] and the psychotherapist-client privilege. Each of these privileges vests the patient/client with the power to prevent the doctor or counselor from disclosing information learned in the course of providing treatment:

13–90–107. **Who may not testify without consent.** (1) There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases:

. . .

*District Court,* 682 P.2d 33, 37 (Colo.1984).

---

1. The physician-patient privilege applies to psychiatrists, who are medical doctors. *See Bond v.*

(d) A physician, surgeon, or registered professional nurse duly authorized to practice his profession pursuant to the laws of this state or any other state shall not be examined without the consent of his patient as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient . . .

. . .

(g) A licensed psychologist, professional counselor, marriage and family therapist, social worker, or unlicensed psychotherapist shall not be examined without the consent of such licensee's or unlicensed psychotherapist's client as to any communications made by the client to such licensee or unlicensed psychotherapist, or such licensee's or unlicensed psychotherapist's advice given thereon in the course of professional employment. . . .

§ 13–90–107(1), 5 C.R.S. (1998).[2] Although such privileges did not exist at common law, through the enactment of legislation they have become an integral part of our collective legal system. A few years ago, when the Supreme Court announced that federal law recognized a psychotherapist-patient privilege, the Court noted that "all 50 states and the District of Columbia have enacted into law some form of psychotherapist privilege." *Jaffee v. Redmond*, 518 U.S. 1, 12, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996).

In reviewing section 13–90–107 previously, we have explained that the purpose of these privileges is "to enhance the effective diagnosis and treatment of illness by protecting the patient from the embarrassment and humiliation" that might be caused by the disclosure of information imparted to the doctor or therapist during the course of consultation for treatment. *See Clark*, 668 P.2d at 8. Furthermore, we stated in *Clark* that "[t]hese privileges, once they attach, prohibit not only testimonial disclosures in court but also pretrial discovery of information within the scope of the privilege." *Id.*

In *Clark*, we were asked to construe these privileges as qualified privileges, subject to a balancing of interests between a party's need to obtain the information and the privilege holder's interest in preserving confidentiality. *See id.* at 9. Noting that the statutory language of the privileges made no mention of a judicial balancing of interests, we declined to engraft such a process onto the statute. *See id.* Thus, we concluded that "[o]nce these privileges attach, therefore, the only basis for authorizing a disclosure of the confidential information is an express or implied waiver." *Id.*

Trujillo concedes that Johnson's psychiatric and marriage counseling records are privileged communications and therefore the trial court's order for disclosure may stand only if Johnson has impliedly waived her privileges. This issue is the crux of this case.

◼ The party seeking to overcome the privilege bears the burden of establishing that the privilege has been waived. *See id.* at 8. In *Clark*, we established the following test for when courts should find an implied waiver based on the conduct of the privilege holder:

> [T]he appropriate inquiry under such circumstances should be whether the privilege holder has injected his physical or mental condition into the case as a basis of a claim or an affirmative defense.

*Id.* We then proceeded to hold that Clark, the privilege holder, had not injected his physical or mental condition into that case because he had merely denied the other party's allegations that he had prior mental problems, and he had not asserted his mental condition as an affirmative defense. *See id.*

Thus, although *Clark* provides the standard by which we must assess whether there has been an implied waiver of the privileges in this case, it does not provide definitive guidance to us in applying that standard to Johnson's claims for mental suffering damages. Trujillo argues, however, that another case, *Bond v. District Court*, 682 P.2d 33 (Colo.1984), does require us to find an im-

**2.** The statute expressly provides that the physician-patient privilege shall not apply in certain situations, such as a suit for malpractice or a review of a physician's services conducted by designated agencies. *See* § 13–90–107(1)(d)(I)–(III). None of these exceptions are relevant here.

plied waiver here. Because that case is distinguishable on critical facts, we disagree.

In *Bond*, we held that the petitioners had waived their physician-patient privilege "by requesting an award for damages for mental suffering and expenses for psychiatric care." *Bond*, 682 P.2d at 38. The first fact distinguishing this case from *Bond* is that the privilege holders in *Bond* sought compensation for expenses they incurred in obtaining psychiatric treatment for emotional problems for which, they claim, the other party was ultimately responsible. *See id.* at 36, 38. Here, Johnson asserts that neither her psychiatric treatment nor her marriage counseling are related to the accident. She does not seek compensation for any expenses associated with either of these forms of counseling. The second fact distinguishing this case from *Bond* is that the privilege holders in *Bond* conceded that they had injected their mental condition into that case as a basis of a claim. *See id.* at 38. Johnson has made no such concession here. Thus, we do not agree that *Bond* is controlling precedent on the issue of whether Johnson's generic damage claims for mental suffering have injected her mental condition into the case as a basis for a claim and thereby impliedly waived her physician-patient and psychotherapist-patient privileges. Rather, this issue is a matter of first impression in Colorado.

### B.

We recognize that there are valid arguments on both sides of this debate. Trujillo argues that some of Johnson's complaints of mental suffering that she attributes to the accident are consistent both with the symptoms of depression, for which her psychiatrist is treating her, and with her complaints resulting from the breakup of her marriage. It would be unfair, Trujillo argues, if she

were precluded from discovering potential causes of Johnson's mental and emotional suffering that are not related to the accident, such as her depression. Trujillo also notes that courts and commentators have criticized the physician-patient privilege for suppressing the truth and have argued that the resulting harm to justice is far more substantial than the harm that disclosure would cause to the physician-patient relationship.

Johnson emphasizes the following points: (1) that she has never alleged or claimed damages for a psychiatric condition as a result of the accident; (2) that she never sought any psychiatric or marriage counseling as a result of this accident; and (3) that she has not endorsed any psychiatric or psychological experts to testify in this case. Johnson urges us to draw a distinction between the type of mental suffering for which she seeks damages and an impairment of mental faculties. Johnson argues that the type of mental suffering for which she seeks damages can take many forms, including embarrassment, humiliation, worry, insult, and emotional distress. Johnson asserts that these are matters that are within the everyday experience of the average juror and do not require an expert determination. Because she has not claimed any psychiatric injury or impairment of her mental faculties, Johnson contends, she has not injected her mental condition into this case as a basis for a claim.

In looking to other states, we find that courts have come down on both sides of this issue. Some courts have held that generic claims for mental anguish put a plaintiff's mental condition at issue and thereby waive that plaintiff's privileges.[3] Other courts have concluded that such claims do not provide a sufficient basis for an implied waiver.[4]

---

3. *See Scheff v. Mayo*, 645 So.2d 181, 182 (Fla. Dist.Ct.App.1994) (holding that a plaintiff who seeks mental anguish damages arising out of a motor vehicle accident has made his emotional condition an element of his negligence claim and therefore cannot invoke the psychotherapist-patient privilege); *Cline v. Friedman*, 882 S.W.2d 754, 761 (Mo.App.1994) (in a medical malpractice action, stating that "[i]t is beyond question that plaintiff initially waived her physician-patient privilege by placing her mental condition in

issue in an attempt to recover for 'mental anguish'").

4. *See Ex parte United Serv. Stations, Inc.*, 628 So.2d 501, 505 (Ala.1993) (noting that the psychotherapist privilege "will not be impliedly waived simply by a patient's seeking damages for injuries relating to a mental or emotional condition"); *Wilson v. Bonner*, 166 Ga.App. 9, 303 S.E.2d 134, 142 (1983) (stating that the fact that appellant was seeking to recover damages for

■ In our view, Trujillo's most compelling argument for why we should find an implied waiver is that the information sought may be relevant to a determination of the extent to which Johnson's mental suffering is properly attributable to the accident as opposed to some other cause. We find this argument ultimately unpersuasive. In essence, this argument boils down to the assertion that the information sought may be relevant to Trujillo's defense. However, it is the very nature of evidentiary witness privileges to "sacrifice some availability of evidence relevant to an administration of justice." Charles T. McCormick, *McCormick on Evidence* § 72, at 269 (John W. Strong et al., eds., 4th ed.1992). Such sacrifice is warranted by the social importance of interests and relationships that the privileges seek to protect. *See id.* Thus, we agree with the Supreme Court of Texas that "relevance alone cannot be the test, because such a test would ignore the fundamental purpose of evidentiary privileges, which is to preclude discovery and admission of relevant evidence under prescribed circumstances." *R.K. v. Ramirez,* 887 S.W.2d 836, 842 (Tex.1994).

We recognize that the rationale for court-implied waivers of these privileges did arise out of a concern for unfairness, but we believe it arose from a concern for a greater unfairness than the potential exclusion of relevant evidence. The main concern is that a patient, having brought a defendant into court, could then use the privilege as a sword instead of a shield:

> [I]t is not human, natural, or understandable to claim protection from exposure by asserting a privilege for communications to doctors at the very same time when the patient is parading before the public the mental or physical condition as to which he consulted the doctor by bringing an action for damages arising from that same condition. This, in the oft-repeated phrase, is to

make the privilege not a shield only, but a sword.

McCormick, *supra,* § 103, at 384.

■ Here, we do not perceive a danger that Johnson is effectively making an unseemly, offensive use of the privilege. Johnson is a tort plaintiff who asserts, like many others in her position, generic claims for damages for mental suffering incident to her physical injuries. As it happens, Johnson has sought counseling for some unrelated emotional issues at various times in her life. Johnson has not made any independent tort claims for either intentional or negligent infliction of emotional distress, in which the question of liability would turn on her mental condition and the cause of it. She did not seek counseling for any emotional issues related to the accident. She does not seek compensation for the expenses incurred in obtaining either psychiatric counseling or marriage counseling. And finally, she does not plan to call any expert witnesses to testify about her mental suffering. Under these circumstances, we hold that bare allegations of mental anguish, emotional distress, pain and suffering, and loss of enjoyment of life are insufficient to inject a plaintiff's mental condition into a case as the basis for a claim where the mental suffering alleged is incident to the plaintiff's physical injuries and does not exceed the suffering and loss an ordinary person would likely experience in similar circumstances. Here, the mental suffering for which Johnson claims damages is incident to her physical injuries and does not exceed the suffering and loss an ordinary person would likely experience in similar circumstances. Thus, the trial court may not find an implied waiver of Johnson's physician-patient or psychotherapist-client privileges based on the fact that she has made these claims for mental suffering damages. Therefore, the trial court erred in ordering that the records relating to Johnson's psychiatric and marriage counseling be disclosed.[5]

---

injuries of a mental and emotional nature would not constitute a waiver under Georgia's statutory patient-litigant exception to the privilege); *Tylitzki v. Triple X Serv., Inc.,* 126 Ill.App.2d 144, 261 N.E.2d 533, 536–37 (1970) (holding that psychiatrist-patient privilege was not impliedly waived by the filing of a complaint that seeks damages for pain and suffering).

**5.** Our analysis necessarily depends in part on Johnson's assertions about how she intends to pursue this case. Should she alter her current strategy by, for example, endorsing her psychiatrist as a witness in this case, then the trial court would have good reason to rule that she had impliedly waived her physician-patient privilege with respect to her psychiatric records.

In the event that a jury finds one or both Respondents liable for Johnson's injuries, the undeniable consequence of our decision today is as follows: when the jury calculates the amount of damages to award Johnson for items such as the pain and suffering she will experience as a result of having to undergo neck surgery, the jury will not be made aware of the details of her treatment for depression or her marriage counseling.[6] This does not appear to be too high a cost for the public and private benefits of the privileges that the General Assembly sought to obtain by creating the privileges in the first place.

Indeed, we are convinced that to hold otherwise in this case would degrade the privileges and undermine the public policy of preserving confidence that they were designed to implement. We reiterate that Johnson's claims for mental suffering damages are typical of tort plaintiffs in personal injury and other cases. Amongst those in our populace who, through no fault of their own, find themselves on the plaintiff side of a tort case, there will always be a certain proportion who have sought counseling for unrelated personal problems or who are suffering from unrelated emotional difficulties. We share the concern of the state courts in Illinois, which feared that finding waivers in cases such as this would open up a "pandora's box of inquiry into the mental condition of claimants":

> It is not difficult to consider the many ways in which it would be argued that the mental conditions of claimants are at issue. Soon there would exist more areas of inquiry deemed exceptions to the privilege than there would be areas of inquiry protected by the privilege. The privilege of confidentiality is far too important to be brushed aside when, as here, the mental

condition of the plaintiff may be only peripherally involved.

*Thiele v. Ortiz,* 165 Ill.App.3d 983, 117 Ill. Dec. 530, 520 N.E.2d 881, 888 (1988); *see also Tylitzki,* 261 N.E.2d at 536; *Webb v. Quincy City Lines, Inc.,* 73 Ill.App.2d 405, 219 N.E.2d 165, 167 (1966).

Finally, as further support for our decision today, we note that in a distinct, but analogous context, this court has previously ruled that generic damage claims for mental suffering are insufficient to place a litigant's mental condition "in controversy" for purposes of determining whether that litigant should be subject to a medical examination pursuant to C.R.C.P. 35(a). *See Tyler v. District Court,* 193 Colo. 31, 34, 561 P.2d 1260, 1262–63 (1977). Although Trujillo argues that the Rule 35(a) context requires a higher standard for finding a waiver of the privileges because court-ordered mental examinations are more intrusive than court-ordered disclosure of medical or counseling records, we are not persuaded that this is always true.[7] We can imagine many circumstances in which the compelled disclosure of sensitive and private medical and counseling records is as offensive or more offensive to a litigant's privacy, health, and dignity interests as a court-ordered mental examination would be. Moreover, unlike a court-ordered mental examination, court-ordered disclosure of confidential records related to mental health treatment undercuts the additional, public interest furthered by the privileges of encouraging citizens to seek help for their emotional problems.[8]

## IV. CONCLUSION

We conclude that Johnson did not waive her physician-patient and psychotherapist-

---

6. We note that the fact of psychiatric treatment or marriage counseling itself is not privileged, however.

7. *See LeGendre v. County of Monroe,* No. 194647, 1999 WL 183852, at *11, 234 Mich.App. 708, ——, —— N.W.2d ——, —— (1999) (finding that cases interpreting the "in controversy" requirement for court-ordered mental examinations are instructive in determining whether there has been an implied waiver in the context of the

discovery of medical records, despite the argument that mental examinations are more intrusive than the disclosure of medical records).

8. *See Jaffee,* 518 U.S. at 11, 116 S.Ct. 1923 (holding that "[t]he psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem" and that "[t]he mental health of our citizenry ... is a public good of transcendent importance").

client privileges by making generic claims for mental suffering damages incident to her physical injuries. Therefore, we hold that the trial court did not have the discretion to order that Johnson's psychiatric and marriage counseling records be disclosed. Thus, we now make the rule to show cause absolute.