Nancy L. HOFFMAN, Plaintiff,

v.

BROOKFIELD REPUBLIC,
INC., Defendant.

No. 03SA361.

Supreme Court of Colorado.

April 5, 2004.

Holland & Hart, LLP, Steven C. Choquette, Marcy G. Glenn, Denver, Colorado, Attorneys for Plaintiff.

Wood, Ris & Hames, P.C., Mark R. Davis, Kimberly A. Allegretti, Denver, Colorado, Attorneys for Defendant.

Justice RICE delivered the Opinion of the Court.

The Petitioner, Nancy L. Hoffman, is a plaintiff in a personal injury case against the Respondent, Brookfield Republic, Inc. ("Brookfield"). Hoffman challenges the district court's order compelling her to disclose to Brookfield all records concerning her mental health care for the ten years preceding the accident underlying the case, as well as for psychotherapy which preceded even that ten-year period.

We issued a rule to show cause as to why the district court's order should not be reversed. We hold that Hoffman did not inject her mental condition into the case so as to impliedly waive her statutory psychotherapist-patient privilege merely by making a generic claim for "severe pain and suffering, and emotional distress" incident to the physical injuries sustained. Therefore, we now make the rule absolute.

## I. FACTS AND PROCEDURAL HISTORY

In July 2000, Hoffman was injured when she slipped and fell on an outdoor stone staircase at a property owned and maintained by Brookfield. Hoffman's primary physical injuries as described in her complaint consisted of "severe bruising that lasted for weeks; the growth of a permanent fibrous mass beneath the skin of her left lower back/buttock; and the onset of recurring episodes of severe muscle spasms, sciatica, and severe, debilitating pain." In addi-

tion to seeking damages for these physical injuries, Hoffman sought recovery for "severe pain and suffering, and emotional distress," which she alleged were caused directly by the accident and its resulting physical injuries.

Through pretrial discovery, Brookfield sought further information regarding the nature and scope of Hoffman's claimed physical and emotional injuries. Brookfield also sought "all records of any psychiatrist, psychologist, social worker, or other mental health professional who may have treated [Hoffman] at any time within the ten years prior to the incident, or after the incident," as well as "the name and address of each physician, therapist, psychologist or other medical or mental health care professional who has provided [Hoffman] with medical or mental care or treatment for the injuries complained of in the Complaint."

In response to Brookfield's written interrogatory, Hoffman provided a detailed account of her physical injuries as well as the resulting emotional distress. According to Hoffman, her emotional distress was characterized by "recurrent and very disturbing flashbacks of and nightmares about the fall and its aftermath"; "humiliation, embarrassment and heightened self-consciousness over her physical disfigurement"; "anxiety and concern with regard to dating and relationships"; "fear of stairs"; "psychological distress from knowing that, as a direct result of the injuries, she is more frail, experiences regular pain, has less energy, and is less active than she was before"; "worry, anxiety and dread that she never knows when or where she will be stricken by one of the debilitating spasms she has experienced since the fall"; "episodes of depression related to her fall and injuries, her physical deformity and altered self-image, her pain and achiness, her decreased strength and stamina, and the spasm episodes"; and frustration and anger based on her belief that Brookfield "could easily and inexpensively have prevented her fall" and her resulting "injuries, pain, inconvenience and anguish." Hoffman reiterated these details regarding her emotional distress at her deposition.

Although Hoffman objected to the request for her mental health records pre-dating the accident, she did disclose at her deposition that she had received regular psychotherapy for general emotional issues from Dr. Paulette Fire over a two-year period which ended approximately ten years before the accident, but that she had received no further treatment nor had she taken any medication for mental problems in the years between that counseling and the accident. Additionally, while she refused to provide releases for her psychotherapy records, she did agree to provide releases for all medical records covering the five-year period preceding the accident. Finally, Hoffman released the records for the single counseling session she had attended following the accident, during which she claimed not to have received any significant mental counseling.

Based on Hoffman's refusal to provide releases for her mental health records pre-dating the accident,[1] Brookfield filed with the district court a Motion to Compel Production of Documents and For Sanctions seeking full disclosure of all psychotherapy and other mental health records for the ten-year period prior to the accident as well as for her counseling with Dr. Fire. In support of its Motion, Brookfield asserted that Hoffman had impliedly waived her physician-patient privilege by pleading a mental condition as the basis of her claim. Hoffman objected to Brookfield's Motion, arguing that "because Ms. Hoffman has only claimed general emotional distress damages, she has not waived her privilege regarding any of her psychological records."

At the hearing on the issue, the parties debated whether Hoffman had sufficiently injected her specific mental condition into the claim so as to constitute an implied waiver of the psychotherapist-patient privilege as to her psychotherapy records. *See, e.g., Johnson v. Trujillo*, 977 P.2d 152 (Colo.1999) (plaintiff does not inject her mental condition into the case so as to impliedly waive psychotherapist-patient privilege by bringing a generic damages claim for mental suffering incident to physical injuries); *Samms v. Dist.*

*Court*, 908 P.2d 520 (Colo.1995) (medical malpractice plaintiff impliedly waives physician-patient privilege by alleging physical or mental condition as basis for claim of damages). While Hoffman asserted that her claim was one for generic emotional distress incident to the physical injuries sustained, Brookfield pointed to the more specific description of distress provided by Hoffman in both her written interrogatories as well as in her deposition. Ultimately, the district court agreed that Hoffman had injected her mental condition into the case and further found that Brookfield was entitled to the withheld information in order to prepare its defense:

> [I]f there's some other reason that she's responding in this incident to and having psychological distress, in addition to, or even in conjunction with, what occurred in this incident, these guys are entitled to know that. They're entitled to find out that.... [W]e are called upon when these cases are brought to balance specifically the interest of everybody involved. And whether by so doing, and by bringing such a claim in this case, and by making these types of responses in the discovery such that it puts the Defendants on notice, that these are the issues she's bringing up and this is what she's going to say at trial, well then absolutely to my mind, they have the right to go find out what's going on.

Thus, the district court apparently balanced Hoffman's interest in her psychotherapist-patient privilege against Brookfield's claimed need for the records in order to prepare its defense. Furthermore, the district court relied on the more particularized answers provided by Hoffman in the written interrogatories as demonstrating that Hoffman had alleged a more unique form of psychological distress than the generic emotional distress generally associated with a personal injury action, and had thereby "sufficiently injected her physical and mental condition into this case as the basis, in part, of her claims." As such, the court ordered Hoffman to release all mental health records

---

1. Brookfield also alleged that Hoffman's attorneys had failed to provide them with the promised releases for her other medical records. The district court determined that any failure to produce the undisputed records was accidental, and declined to issue sanctions for the delay in production.

for the ten-year period preceding the accident, as well as the records of her psychotherapy with Dr. Fire.

We issued a rule to show cause as to why the district court's order should not be reversed. Because we find that the district court erred in ordering Hoffman to produce her mental health records, we now make the rule absolute.

## II. Analysis

### A. Original Jurisdiction

■ We begin by noting that review here is appropriate due to the nature of the rights implicated and the potential for irreparable harm. Under C.A.R. 21, we have original jurisdiction to review whether a trial court has abused its discretion in circumstances where the remedy on appeal would be inadequate. *See Trujillo,* 977 P.2d at 154; *Kourlis v. Dist. Court,* 930 P.2d 1329, 1330 n. 1 (Colo.1997). We have long recognized that a trial court's improper order requiring the disclosure of records which are protected by a statutory privilege may require immediate review because "the damage to [the holder of the privilege] will occur upon their disclosure regardless of the ultimate outcome of any appeal from a final judgment." *Clark v. Dist. Court,* 668 P.2d 3, 7 (Colo.1983) (reversing a trial court's discovery order where the defendant had not waived his privilege as to his psychiatric and psychological records regarding his drug and alcohol treatment); *see also, e.g., People v. Sisneros,* 55 P.3d 797, 799 (Colo.2002) (reversing a trial court's discovery order where the victim-witness had not waived her psychologist-patient privilege). Here, if Hoffman's prior mental health records are in fact privileged, then the damage caused by disclosure cannot be remedied on appeal. Thus, we find it appropriate to address the validity of the district court's order in this original proceeding.

### B. The Privilege[2]

■ In *Clark v. District Court,* we examined in detail the purpose and scope of the physician-patient privilege as applied to psychiatric and psychological records. 668 P.2d at 7–11. There, a conservator for the estates of the decedent's children brought a wrongful death action against a bar and its employee, Clark, who was acting as the bar's manager when he shot and killed the decedent in the bar's parking lot. *Id.* at 6. The conservator alleged that part of the bar's liability stemmed from its knowledge of Clark's "long history of mental illness including alcohol and drug abuse." *Id.* In his answer, Clark denied liability and asserted affirmative defenses including self-defense, defense of property, and contributory negligence. *Id.* at 6 n. 1. During discovery, the conservator sought access to Clark's treatment records, and the trial court ordered their disclosure over Clark's objection. *Id.* at 6–7. Upon review, we found that the trial court exceeded its discretion in issuing that order. *Id.* at 11.

Relying upon the statutory language of section 13–90–107(1), which states that "[t]here are particular relations in which it is the policy of the law to encourage confidence and preserve it inviolate," we noted that the purpose of both the physician and psychologist privileges was "to enhance the effective diagnosis and treatment of illness by protecting the patient from the embarrassment and humiliation that might be caused by the physician's disclosure of information imparted to him by the patient during the course of a consultation for purposes of medical treatment." *Clark,* 668 P.2d at 8. Observing that these privileges, once attached, apply equally to in-court testimony and to pretrial discovery of information, we then went on to examine the requirements of a party seeking to overcome the claim of privilege. *Id.*

We first rejected the trial court's argument that the privileges should be qualified and therefore subject only to a balancing test

**2.** While section 13–90–107, 5 C.R.S. (2003), specifically applies to communications between physicians and patients, § 13–90–107(1)(d), and between psychologists and patients, § 13–90–107(1)(g), we have found that the privilege applies to psychiatrist-patient relations by treating them as a subcategory of physician-patient rela-

tions. *See Bond v. Dist. Court,* 682 P.2d 33, 37 (Colo.1984). Additionally, the psychotherapist-patient privilege falls under the broader psychologist-patient privilege. § 13–90–107(1)(g). Thus, our analysis here applies equally to records of physicians, psychiatrists, psychologists, and psychotherapists.

weighing the holding party's interest in the privilege against the challenging party's need for the information. *Id.* at 9. Rather, finding no such limiting language in the statute regarding the privileges at issue, we held that "the only basis for authorizing a disclosure of the confidential information is an express or implied waiver." *Id.* Next, we addressed the issue of what constitutes such waiver and concluded that implied waiver may not be found "based on nothing more than the privilege holder's act of filing a pleading in a case in which his physical or mental condition may be an issue." *Id.* at 10. On the other hand, we noted that "[w]hen the privilege holder pleads a physical or mental condition as the basis of a claim or as an affirmative defense, the only reasonable conclusion is that he thereby impliedly waives any claim of confidentiality respecting that same condition." *Id.* Thus, in *Clark,* because it was the plaintiff, and not the defendant, who had injected the defendant's mental condition into the case, we found that the defendant had not expressly or impliedly waived his privileges as to his past drug and alcohol treatment. *Id.* at 11.

A year later, in *Bond v. District Court,* we applied the holding in *Clark* to find that the plaintiffs, who brought a personal injury suit seeking compensation for physical injuries as well as damages for mental suffering and expenses for psychiatric counseling, had impliedly waived the physician-patient privilege as to their psychological and psychiatric records. 682 P.2d 33 (Colo.1984). Our finding of waiver in *Bond* was based on two distinct facts: first, the plaintiffs there "sought compensation for expenses they incurred in obtaining psychiatric treatment for emotional problems for which, they claim, the other party was ultimately responsible," *Johnson v. Trujillo,* 977 P.2d 152, 155 (Colo.1999) (discussing the holding of *Bond*), and, second, the plaintiffs in *Bond* conceded that they had injected their mental condition into the lawsuit as the basis of a claim. *Bond,* 682 P.2d at 38. As such, they had impliedly waived their physician-patient privilege as to the psychiatric records detailing that mental condition. *Id.*

We later looked to our holdings in *Clark* and *Bond* to determine whether a personal injury plaintiff impliedly waives her physician-patient and psychotherapist-patient privileges by bringing a more generic claim for emotional distress. In *Johnson v. Trujillo,* a case particularly analogous to the one before us today, the plaintiff, Johnson, brought a personal injury case arising out of a motor vehicle accident in which she alleged physical injuries as well as general claims for emotional distress arising out of those injuries. 977 P.2d at 152. At her deposition, Johnson explained her emotional distress, stating that the accident had been "very upsetting" and "extremely emotional and scary," that she continued to worry about others involved in the accident as well as herself, that she was afraid of facing the surgery necessary for her injuries, and that she was concerned about how her son would be impacted by her injuries and her surgery. *Id.* at 153–54. Johnson further disclosed that she had undergone marriage counseling and divorce after the accident and that she was also seeing a psychiatrist for depression at the time of the deposition. *Id.*

The defendant, Trujillo, thereafter filed a motion to compel production of Johnson's records from her marriage counselor as well as her psychiatrist, arguing that Johnson had "impliedly waived her physician-patient and psychotherapist-patient privileges because she had injected her mental condition into the case by claiming damages for mental anguish, emotional distress, pain and suffering, and loss of enjoyment of life." *Id.* at 154. The trial court agreed, and issued an order requiring Johnson to produce her records.

In an original proceeding, we found the trial court's order to be improper. Johnson argued that she was merely asserting a generic claim for mental suffering, which does not therefore inject any particular mental condition into the case so as to waive her privilege as to unrelated psychiatric records. *Id.* Trujillo, on the other hand, argued that Johnson had injected her mental condition into the case and that the information sought was necessary to her defense insofar as Johnson's mental suffering might be more attributable to some other cause, rather than

the accident. *Id.* While recognizing that the information withheld might be somewhat relevant to Trujillo's defense, we concluded that even such relevant evidence might not be admissible and that "[s]uch sacrifice is warranted by the social importance of interests and relationships that the privileges seek to protect." *Id.* at 157. Additionally, we observed that Johnson was not seeking to "mak[e] an unseemly, offensive use of the privilege," but rather was a typical tort plaintiff seeking general damages for the mental suffering which was incident to her physical injuries. *Id.*

Because Johnson did not seek counseling for emotional distress related to the accident, did not seek compensation for psychiatric or counseling expenses, and did not plan to call any expert witnesses regarding her emotional distress damages, we found that Johnson had not waived her privilege. *Id.* Furthermore, we noted that "[a]mongst those in our populace who, through no fault of their own, find themselves on the plaintiff side of a tort case, there will always be a certain proportion who have sought counseling for unrelated personal problems or who are suffering from unrelated emotional difficulties." *Id.* at 158. As a matter of public policy, therefore, we were unwilling to find waiver under circumstances where the plaintiff has not alleged any unique psychological harm and where the plaintiff's claim is unrelated to any mental health counseling which the plaintiff had sought. *Id.* In sum, we held:

> [B]are allegations of mental anguish, emotional distress, pain and suffering, and loss of enjoyment of life are insufficient to inject a plaintiff's mental condition into a case as the basis for a claim where the mental suffering alleged is incident to the plaintiff's physical injuries and does not exceed the suffering and loss an ordinary person would likely experience in similar circumstances.

*Id.*

■ Thus, it is well-established that the psychotherapist-patient privilege may not be overcome by an opposing party in the absence of an express or implied waiver by the party holding the privilege. A party may be deemed to have impliedly waived that privilege by injecting his or her mental condition into the case through a claim for damages or an affirmative defense. Nevertheless, a party does not sufficiently inject his or her mental condition into the case so as to constitute waiver merely by seeking damages under a generic claim of mental suffering which is incidental to the physical injuries underlying the suit. With these principles in mind, we now turn to the instant case.

## C. Application

In her complaint, Hoffman sought damages for her physical injuries as well as for "severe pain and suffering, and emotional distress." In response to Brookfield's interrogatories and at her deposition, Hoffman further explained the nature of her suffering and emotional distress by providing details regarding the impact of her injuries on her mental state, her self-esteem, and various other aspects of her quality of life. Hoffman indicated no intention to have experts in psychology, psychiatry, or psychotherapy testify at trial, nor did she seek damages for the cost of any counseling. In fact, Hoffman has not sought any counseling related to her accident, with the exception of a single session, the record of which she has already released to Brookfield. As such, the relationship between any mental health records and Hoffman's claim against Brookfield is tenuous at best.

■ Nevertheless, under the guise of exploring Hoffman's emotional distress through the pretrial discovery process, Brookfield has sought to pry into Hoffman's personal life regarding matters having little or nothing to do with her slip-and-fall accident and its resulting injuries.[3] In addition to seeking all

---

**3.** Reviewing Brookfield's deposition of Hoffman, we note with concern the extent to which Brookfield's attorneys have strayed into matters which are irrelevant and inappropriate. For example, Hoffman, a single woman, had stated that the appearance of the lump on her buttocks has caused her "humiliation, embarrassment and heightened self-consciousness over her physical disfigurement" as well as "anxiety and concern with regard to dating and relationships." At no point did Hoffman claim that she had been openly criticized or personally harassed by others

mental health records for the ten years preceding the accident, Brookfield also sought full disclosure of Hoffman's psychotherapy with Dr. Fire, counseling which ended ten years prior to the accident and which, quite obviously, bore no direct relationship to the suffering Hoffman experienced due to the physical injuries sustained in the accident. While such records might have some extremely limited relevance insofar as Brookfield might allege that Hoffman's personal problems, rather than the accident itself, have contributed to Hoffman's emotional distress, we have already held that " 'relevance alone cannot be the test, because such a test would ignore the fundamental purpose of evidentiary privileges, which is to preclude discovery and admission of relevant evidence under prescribed circumstances.' " *Johnson,* 977 P.2d at 157 (quoting *R.K. v. Ramirez,* 887 S.W.2d 836, 842 (Tex.1994)). As such, the district court erred when it considered Brookfield's need for the information as a pertinent factor in determining whether the privilege had been waived. Rather, the only inquiry is whether Hoffman, by seeking damages for mental suffering, injected her mental condition into the case.

Hoffman's claim for emotional distress is nothing more than a garden variety mental suffering claim typical of most personal injury lawsuits, and therefore does not significantly inject her mental condition into the case. Moreover, the fact that Hoffman provided greater detail regarding the nature of her suffering, both in her written interrogatories and at her deposition, does not transform her generic claim for mental suffering into a peculiar assertion of psychological damages. Rather, Hoffman merely provided for Brookfield detailed information regarding the kinds of suffering about which she would be testifying to the jury. To find that Hoffman injected her mental condition, and therefore waived her privilege, by cooperating with Brookfield in her written interrogatories and in her deposition would not only defeat a statutorily created privilege with broad public policy implications, but would also thwart basic goals of pretrial discovery. *See, e.g., Samms v. Dist. Court,* 908 P.2d 520, 525 (Colo.1995) ("[T]he purpose of pretrial discovery is to eliminate surprise at trial, discover all relevant evidence, simplify the issues, and promote the expeditious settlement of cases.").

Here, Hoffman, like the plaintiff in *Johnson,* has not sought any significant counseling for distress related to the accident, has not sought compensation for psychiatric expenses, and does not plan to call any expert witnesses to testify regarding the nature and extent of her emotional distress. Rather, the mental suffering Hoffman alleges "is incident to her physical injuries and does not exceed the suffering and loss an ordinary person would likely experience in similar circumstances." *Johnson,* 977 P.2d at 157. As such, Hoffman did not inject her mental condition into the case so as to impliedly waive her psychotherapist-patient privilege. The district court therefore erred when it ordered Hoffman to disclose her mental health records.

## III. CONCLUSION

We conclude that Hoffman did not waive her psychotherapist-patient privilege by making generic claims for mental suffering damages incident to her physical injuries. We therefore hold that the district court abused its discretion in ordering Hoffman to disclose her mental health records for the last ten years, as well as Dr. Fire's psychotherapy records. We now make the rule to show cause absolute.

based on her appearance. Nevertheless, at the deposition, Brookfield questioned Hoffman regarding the number and names of men whom she had dated or who had otherwise seen the lump. When Hoffman and her attorney protested that such information was irrelevant and that Hoffman would be embarrassed if they were to question men whom she had dated briefly over the last several years, Brookfield's attorneys responded, "Well, you are the one making the claims. You can withdraw it, if you want." While we acknowledge the need for thorough and dedicated representation, we think it important to discourage counsel from engaging in questioning which appears designed to do little more than harass, embarrass, and belittle the opposing party.