**In re Gloria Gina ALCON, Plaintiff,**

v.

**Ronald Ray SPICER, Defendant.**

**No. 04SA347.**

Supreme Court of Colorado,
En Banc.

June 6, 2005.

As Modified June 27, 2005.

Gradisor, Trechter, Ripperger, Roth & Croshal, James M. Croshal, Pueblo, for Petitioner.

Paul S. Edwards & Associates, Robert D. Jones, Colorado Springs, Ireland Stapleton Pryor & Pascoe, P.C., Richard L. Shearer, J. Alan Call, Denver, for Respondent.

Montgomery Little & McGrew, P.C., Patrick T. O'Rourke, Kari MacKercher Hershey, Greenwood Village, for amicus curiae Copic Insurance Company.

Johnson & Ayd, P.C., James D. Johnson, Denver, for amicus curiae Colorado Defense Lawyers Association.

Mickey W. Smith, Pueblo, for amicus curiae Colorado trial Lawyers Association.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. Introduction

In this original proceeding, we consider the scope of the implied waiver of the physician-patient privilege created when the patient files a personal injury lawsuit. We also consider whether a plaintiff who has claimed a loss of earnings as damages in a personal injury lawsuit is required to disclose his or her tax returns. The Pueblo County District Court ordered the petitioner, Gloria Gina Alcon, to authorize the release of her complete medical records from her family physician, her pharmaceutical records for the past ten years, as well as her income tax returns for the past ten years. Alcon petitioned for review of this ruling pursuant to C.A.R. 21, and we issued a rule to show cause why it should not be reversed.

We have examined the first issue in the past and determined that a patient does not make a complete waiver of the physician-patient privilege as to all medical records by making generic claims common to all personal injury lawsuits. Rather, the waiver is limited to those records relating to the cause and extent of the injuries and damages allegedly sustained as a result of the defendant's claimed negligence. We reaffirm this standard and hold that the trial court abused its discretion by ordering blanket disclosure of Alcon's complete medical records and past ten years of pharmaceutical records.

Although not privileged, Alcon's tax returns are confidential. As such, the respondent, Ronald Spicer cannot obtain discovery of the returns absent a showing of compelling need for their disclosure. Because Spicer already has access to the information needed to defend against Alcon's claim for future loss of earnings through her W–2 forms, he cannot make the adequate showing here. Accordingly, we make our rule absolute.

## II. Facts and Procedural History

Alcon filed suit against Spicer after a car driven by Spicer struck a car driven by Alcon from behind. In her complaint, Alcon alleged that Spicer's negligence caused the following damages: 1) past and future loss of enjoyment of life, 2) past and future pain, suffering and mental anguish, 3) past and future inconvenience, 4) past and future loss of essential services, 5) past and future medical, rehabilitative and other health-care related expenses, 6) loss of past and future earnings and earning potential, and 7) permanent physical impairment and/or residuals. Both parties agree that these are standard categories of damages commonly claimed by personal injury plaintiffs.

In response to interrogatories submitted by Spicer, Alcon specified that her injuries were "lower back pain, neck and shoulder pain, chipped tooth, [and] depression." Alcon answered "no" to an interrogatory asking if, prior to the accident, she had had complaints or injuries to the same parts of the body claimed to have been injured in the accident. Additionally, she indicated that her claim for future loss of earnings arose from the fact that she may be forced to retire early from employment at a King Soopers grocery store as a result of the accident.

During initial discovery, Alcon provided Spicer with a list of ten health care providers from whom she sought treatment after the accident and furnished Spicer with releases authorizing disclosure of their records pertaining to her treatment, as well as her automobile accident insurance personal injury protection (PIP) file. Spicer also sought authorization for the release of the records of Dr. Pamela Aschenbrenner, Alcon's general family physician. Alcon refused to sign a release for Dr. Aschenbrenner's records, claiming that they were privileged and that she had not consulted or sought treatment from Dr. Aschenbrenner in connection with the accident or injuries similar to those claimed in the accident. Spicer subsequently issued a subpoena duces tecum to Dr. Aschenbrenner, demanding her appearance at a records deposition. Although Alcon provided Spicer with W–2 income withholding tax forms (W–2 forms) from her employment at King Soopers, she declined Spicer's request for her tax returns from the past ten years, asserting that they were irrelevant and confidential.

Alcon filed a motion to quash the subpoena and for protective orders for several categories of records sought by Spicer. Spicer brought a motion to compel production of those same documents. After a hearing, the trial court ordered Alcon to produce the complete records of Dr. Aschenbrenner, and provide releases for her pharmaceutical records and tax returns for the past ten years. The court surmised that the requested records were relevant in that they could lead to the discovery of admissible evidence, and that Alcon had waived the physician-patient privilege by putting her physical condition at issue. In making its order, the court simply concluded:

> that the Plaintiff has injected her physical condition into the case. Therefore, she has waived her physician-patient privilege as to those conditions. Because the Court believes that the Defendant's requests for medical records from Dr. Aschenbrenner are relevant or may lead to the discovery

of admissible evidence regarding these conditions, the Court will allow Dr. Aschenbrenner's records to be subpoenaed by the Defendant. The Court believes that counsel for the Defendant is entitled to review those records in order to adequately prepare a defense to the claims asserted by the Plaintiff. For the same reasons, the Plaintiff is ordered to provide releases for the past ten years for pharmaceutical information, for medical records related to her employment, and for workers' compensation records.

As to the request for the tax returns, the court held that "because the Plaintiff has asserted a claim for lost income and lost earning capacity, her past earning history is relevant and she shall provide a release for her tax returns and unemployment records for the past ten years." Following the court's ruling, Alcon turned over the results of a routine bone scan and a 1994 telephone message from Dr. Aschenbrenner's files. The message was from Alcon and read "[she] had a car accident 12/9/94. Her shoulder and neck are hurting her. Can you give her some [medication]."

Pursuant to C.A.R. 21, Alcon petitioned this court for review of the trial court's ruling. We issued a rule to show cause why the full medical records of Dr. Aschenbrenner, ten years of pharmaceutical records, and ten years of Alcon's tax returns should be produced. Because we find that the trial court's order compelling production was overbroad, we now make the rule absolute.

### III. Analysis

#### A. Medical Records

We begin by examining the interaction between the rules of discovery and privilege, and trace the development of the scope of the waiver of the physician-patient privilege in the context of personal injury lawsuits.

C.R.C.P. 26(b)(1) outlines the general scope of discovery. It provides that "parties may obtain discovery regarding any matter, *not privileged,* that is relevant to the claim or defense of a party." (emphasis added). The purposes of discovery include "the elimination of surprise at trial, the discovery of relevant evidence, the simplification of the issues, and the promotion of expeditious settlement of cases." *Bond v. Dist. Court,* 682 P.2d 33, 40 (Colo.1984). Although discovery rules are construed liberally in order to accomplish those goals, both the legislature and this court have recognized the need to limit discovery in certain circumstances. *Id.* The exception from C.R.C.P 26(b)(1) of privileged material reflects this recognition.

■ Privilege is defined in section 13–90–107, C.R.S. (2004), which prevents certain persons from being examined as witnesses in order to protect "particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate." The physician-patient relationship is among those relations the General Assembly sought to protect. To that end, the statute mandates:

> a physician, surgeon, or registered professional nurse duly authorized to practice his profession pursuant to the laws of this state or any other state shall not be examined without the consent of his patient as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient.

§ 13–90–107(d), C.R.S. (2004). This privilege applies "equally to in-court testimony and to pretrial discovery of information." *Weil v. Dillon Companies, Inc.,* 109 P.3d 127, 129 (Colo.2005). Taken together, C.R.C.P. 26(b)(1) and section 13–90–107(d) establish that, even if relevant to the subject matter involved in the pending action, a party is not necessarily entitled to discovery of information from a physician relating to the treatment of a patient.

■ The physician-patient privilege exists "to enhance the effective diagnosis and treatment of illness by protecting the patient from the embarrassment and humiliation that might be caused" by the disclosure of that information. *Weil,* 109 P.3d at 129. In addition to "inspiring the making of medical confidences," the privilege can also be viewed as recognizing the inherent importance of privacy in the physician-patient relationship by protecting the confidences once made. *McCormick on Evidence* § 105 (John W. Strong, ed., 5th ed.1999).

Because the privilege is primarily designed to protect the patient, he or she may waive its protections. *See, e.g., Clark v. Dist. Court,* 668 P.2d 3, 8 (Colo.1983). A waiver, which is really a form of consent to disclosure, can be implied through a patient's conduct as well as obtained by express authorization to the release of information. *Id.* Waiver of the physician-patient privilege occurs when the patient has either expressly or impliedly "forsaken his claim of confidentiality with respect to the information in question." *Id.* Through application of privileges and waivers of privileges, courts attempt to balance the right to confidentiality in communication and the need to ascertain the truth to serve justice. *See* Valerie Reighard, *Evidence: Protecting Privileged Information—A New Procedure for Resolving Claims of the Physician–Patient Privilege in New Mexico,* 32 N.M. L.Rev. 453, 456–57 (2002). The claimant of the privilege bears the burden of establishing the applicability of the privilege. *Clark,* 668 P.2d at 8. Once the privilege has been established, the burden of demonstrating waiver rests with the party seeking to overcome the privilege. *Id.*

One way a party can establish waiver is by showing that the privilege holder "has injected his physical or mental condition into the case as the basis of a claim or an affirmative defense." *Id.* at 10. Making such a showing does not mean that the party seeking to overcome the privilege has established a complete waiver of all communications between the physician and patient. The privilege is still retained with respect to communications unrelated to the claim or defense. Recently, we explained in *Weil* that a plaintiff, by making typical personal injury claims, "did not waive his physician-patient privilege for medical records *wholly unrelated* to his injuries and damages claimed." 109 P.3d at 128 (emphasis added).

The Colorado Supreme Court has not always recognized that initiating litigation results in an implied waiver of the physician-patient privilege. *See Riss & Co. v. Galloway,* 108 Colo. 93, 99, 114 P.2d 550, 553 (1941) (upholding exclusion of testimony of plaintiff's physicians in personal injury action although "doubtless the testimony of both

these witnesses was relevant and material to the issues involved"). Since recognition, implied waivers have always been limited by the circumstances of the case, rather than amounting to consent to general disclosure of all of the patient's communications with his or her physician. We first acknowledged the notion of waiver in *Mauro v. Tracy,* 152 Colo. 106, 380 P.2d 570 (1963), where the plaintiff in a personal injury lawsuit testified about the details of treatment provided by two physicians. The waiver recognized was narrow. We held that "*as to the matters testified to by the plaintiff* the protection of the [privilege] statute was waived." *Id.* at 108, 571 (emphasis added).

Decades later, in *Clark,* we acknowledged a broader waiver than that found in *Mauro,* but one still limited by the plaintiff's allegations. We stated "when the privilege holder pleads a physical or mental condition as the basis of a claim or as an affirmative defense, the only reasonable conclusion is that he thereby impliedly waives any claim of confidentiality *respecting that same condition.*" 668 P.2d at 10 (emphasis added). That standard was echoed in later decisions, always with the qualifier that the waiver applies only to communications respecting the injuries and damages claimed by the privilege holder. For example, in *Samms v. Dist. Court,* 908 P.2d 520, 529 (Colo.1995), while considering whether defense attorneys could conduct an ex parte interview of the plaintiff's physician, we explained that "the scope of any implied waiver necessarily depends on the nature of the claim asserted by the patient." Because the plaintiff in *Samms* was making a claim for medical malpractice for failure to diagnose a heart condition, we observed that "by injecting that issue into the case, Samms waived her physician-patient privilege with respect to *information related to her heart condition* obtained by her physician in the course of diagnosing or treating Samms *for that condition.*" *Id.* at 524 (emphasis added).

Expanding on that logic in two later opinions, we held that making a generic claim for mental suffering incident to a physical injury in a personal injury case did not amount to an implied waiver of the psychotherapist-

patient privilege. *Hoffman v. Brookfield Republic, Inc.*, 87 P.3d 858, 859 (Colo.2004); *Johnson v. Trujillo*, 977 P.2d 152, 153 (Colo. 1999). In both *Hoffman* and *Johnson*, the plaintiffs claimed pain and suffering and emotional distress as categories of damages for injuries caused by the defendants' alleged negligence. *Hoffman*, 87 P.3d at 859; *Johnson*, 977 P.2d at 153. The defendants in both cases sought broad discovery of the plaintiffs' mental health records, arguing that they had waived the psychotherapist-patient privilege by injecting their mental condition into the case. The defendant in *Hoffman* sought disclosure of full mental health records for the past ten years, including records of psychotherapy the plaintiff received for a two-year period ending approximately ten years before the accident. The defendant in *Johnson* claimed she was entitled to view the records from the plaintiff's marriage counselor and psychiatrist relating to her divorce and treatment for depression in connection with her divorce. In both cases, we noted that although the records may have some relevance to the plaintiff's general mental condition and possible alternate causes of mental distress, "relevance alone cannot be the test." *Hoffman* 87 P.3d at 864; *Johnson*, 977 P.2d at 157. Because the records sought were unrelated to treatment of mental health issues arising out of the injuries claimed in the plaintiffs' suits, we held that the privilege had not been waived, and consequently the records could not be disclosed.

We applied similar reasoning to the disclosure of general physical health records in *Weil*, 109 P.3d at 131. After sustaining injuries from slipping and falling in the defendant's store, the plaintiff, Dr. Jerry Weil, sued the store owner, Dillon Companies, to recover for essentially the same categories of damages as Alcon is presently seeking. The trial court ordered Weil to authorize blanket releases of all his medical records from certain healthcare providers. We determined that this order was overbroad because it encompassed medical records unrelated to the injuries and damages claimed by Weil. As in *Hoffman* and *Johnson*, we concluded that Weil's " 'bare allegations of mental anguish, emotional distress, pain and suffering and loss of enjoyment of life' asserted in his

complaint do not rise to the level of injecting his prior mental and physical conditions into the case to the extent that he completely waives the physician-patient privilege." *Id.* at 131.

We acknowledged that, by making these claims for injury, "Weil impliedly made a limited release of medical records *relating to the cause and extent of the injuries and damages* sustained as a result of the defendant's claimed negligence." *Id.* (emphasis added). This waiver, however, did not "amount to a complete release of his prior medical history." *Id.* Dillon alleged that access to the complete records would " 'assure full discovery' as to the cause of the claimed injuries as well as determine the extent that an injury from the slip and fall incident is related to some pre-existing condition." *Id.* at 130. Again as in *Hoffman* and *Johnson*, we rejected this argument, noting that "relevance alone cannot be the test." *Id.* at 131. We directed the defendant to narrow its request and the trial court to narrow its order to medical records pertaining to "the cause and extent of the injuries and damages claimed." *Id.*

■ The discovery dispute presented in the present case is nearly identical to the one we encountered in *Weil*. Like Weil, Alcon has claimed damages for medical expenses, loss of enjoyment of life, pain and suffering, inconvenience and past and future economic losses. Like Weil, Alcon admits that she has waived the physician-patient privilege with respect to the injuries claimed in her lawsuit, and she has accordingly turned over all the medical records relating to the treatment of those injuries. Like Weil, Alcon is not seeking compensation for the treatment described in the records sought by the defendant. Finally, similar to the trial court in *Weil*, the trial court here has ordered Alcon to execute a blanket release authorizing disclosure of her prior medical history "without first determining the extent that the records requested were related to [the plaintiff's] injuries and damages claimed." *Id.*

The above review of our precedent confirms that this order was error. Contrary to the trial court's conclusion, Alcon has not

injected her physical condition into the case such that she waived the physician-patient privilege for all of Dr. Aschenbrenner's records and the past ten years of pharmaceutical records. Rather, Alcon has waived the privilege for those records that relate to the cause and extent of the injuries and damages she claims. Specifically, Alcon has waived her privilege with respect to records pertaining to "lower back pain, neck and shoulder pain, chipped tooth [and] depression."

Spicer argues that because Alcon is making claims for future damages, the wide range of medical records that could have some bearing on her life expectancy are discoverable because they are relevant to the amount of future damages she can be awarded.[1] He also submits that Alcon's general medical records will be helpful in assessing her quality of life for purposes of defending against claims of damages for loss of enjoyment of life. Although Spicer is correct that some information in Dr. Aschenbrenner's records may be relevant in this manner, the tangential relevance of this information is not enough to make the records "related to the injuries and damages claimed" such that they come within the waiver. We have repeatedly stated that "relevance alone cannot be the test" for waiver of the physician-patient or psychotherapist-patient privilege. *Weil,* 109 P.3d at 131; *Hoffman,* 87 P.3d at 864; *Johnson,* 977 P.2d at 157. Extending waiver to anything that is relevant would be to allow the exception to destroy the privilege. Such a standard "would ignore the fundamental purpose of evidentiary privileges, which is to preclude discovery and admission of relevant evidence under prescribed circumstances." *R.K. v. Ramirez,* 887 S.W.2d 836, 842 (Tex. 1994). Moreover, there are many means available to Spicer to learn information having an impact on Alcon's life expectancy without intruding into Alcon's private relationships with her physicians, such as through interrogatories or asking Alcon to submit to a C.R.C.P. 35 physical examination.

Not having had the benefit of our opinion in *Weil,* the trial court abused its discretion by issuing such a broad order. To comply with the privilege statute, the order should have been tailored to the scope of the waiver of the physician-patient privilege, meaning it should have been tailored to the injuries and damages claimed by Alcon. As Alcon is claiming damages for injuries to her shoulder, back and neck, a chipped tooth and depression, only communications relating to those injuries in her pharmaceutical and Dr. Aschenbrenner's records may be released.

■ The procedure for ensuring that discovery of medical records is limited to the scope of the waiver of the physician-patient privilege has not yet been well-defined. We endeavor to provide guidance to litigants and the trial courts in this area today.

Rule 26(b)(5) of the Colorado Rules of Civil Procedure was patterned after Rule 26(b)(5) of the Federal Rules of Civil Procedure. It provides:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

C.R.C.P. 26(b)(5). Because our rule is modeled after the federal rule, commentary and caselaw on the federal is instructive in the interpretation of our own rule.

F.R.C.P. 26(b)(5) was enacted to direct litigants on when and how to assert privilege claims. *See* Rebecca A. Cochran, *Evaluating Federal Rule of Civil Procedure 26(b)(5) as a Response to Silent and Functionally Silent Privilege Claims,* 13 Rev. Litig. 219, 220 (1994).

---

1. Under section 13–25–102, C.R.S. (2004), the statutory mortality table, together with other evidence of "health, constitution, habits and occupation," may be introduced to establish life expectancy. *See Rio Grande S.R.R. v. Nichols,* 52

Colo. 300, 123 P. 318 (1912) (In an action for personal injuries, where there is evidence that the disability complained of is permanent, the mortuary tables are admissible to establish the plaintiff's expectancy of life.).

Under the Rule, when a party wishes to assert privilege in response to a discovery request he or she must notify the party seeking disclosure by providing a privilege log identifying the documents withheld and explaining the privilege claim. *See Paine-Webber Group v. Zinsmeyer Trusts P'ship,* 187 F.3d 988, 992 (8th Cir.1999). The documents must be described in the log with sufficient detail so that the opposing party and, if necessary, the trial court can assess the claim of privilege as to each withheld communication. C.R.C.P. 26(b)(5); *Pina v. Espinoza,* 130 N.M. 661, 668, 29 P.3d 1062, 1069 (N.M.Ct.App.2001). Requiring the party asserting the privilege to furnish information on its applicability was intended to reduce the need for *in camera* inspections of documents. Advisory Committee Notes on F.R.C.P. 26(b)(5). Ultimately, if after reviewing the privilege log, the party seeking discovery still contends the privilege does not apply and the parties cannot resolve the dispute informally, it can request that the trial court perform an *in camera* inspection of the challenged documents entered on the privilege log. *PaineWebber,* 187 F.3d at 992.

Other state courts have adopted the federal procedure for discovery requests involving claims of privilege. *See, e.g., Pina,* 130 N.M. at 667, 29 P.3d at 1068; *Cypress Media, Inc. v. City of Overland Park,* 268 Kan. 407, 427, 997 P.2d 681, 694 (2000); *State ex rel. Atchison, Topeka and Santa Fe Railway Co. v. O'Malley,* 898 S.W.2d 550, 554 (Mo.1995). Colorado, unlike these other states, has adopted a rule equivalent to F.R.C.P. 26(b)(5), and we think the rule offers a workable solution to, and the best allocation of burdens in, discovery disputes involving claims of privilege for medical records.

Consistent with our rule that the claimant of the privilege bears the burden of establishing its applicability, the party asserting the privilege must expend the bulk of the effort by compiling the privilege log. *Clark,* 668 P.2d at 8 (burden of establishing applicability of privilege). Although the trial court may still be called upon to review allegedly privileged documents *in camera,* this review will be narrowed to the documents on the privilege log that the party seeking discovery

challenges, as opposed to, for example, a lifetime of a patient's complete medical records.

On remand, Alcon should be given the opportunity to reassert the physician-plaintiff privilege through compilation of a privilege log. Those records for which she has waived the privilege because they contain communications involving her lower back, neck, shoulder, or chipped tooth, or depression relating to the accident, must be turned over to Spicer. Records for which Alcon contends the physician-patient privilege has been retained must be listed document by document and described so that Spicer and the trial court can assess the applicability of the privilege. By listing a document on the log, Alcon is certifying that it contains information acquired by her physician necessary for treatment and unrelated to the cause and extent of injuries and damages claimed in the lawsuit. If Spicer disagrees with Alcon's assertions of privilege he can, as a last resort, ask the trial court to review *in camera* specific documents from the log. In reviewing challenged documents, the trial court should determine whether Alcon has waived the physician-patient privilege consistent with this opinion and prior precedent.

## B. Tax Returns

■ The trial court also erred in ordering Alcon to produce her tax returns for the past ten years. Alcon opposes the request for her tax returns by asserting that they are confidential and irrelevant. As such, she claims that Spicer must be able to demonstrate a compelling need for the information in the returns before she can be ordered to disclose them. Because Alcon is only claiming present and future damages in connection with lost earnings from King Soopers, and she has already disclosed her W–2 forms, Alcon contends that Spicer can show neither compelling need for nor the relevance of her tax returns. Spicer counters that a "complete picture" of Alcon's income as provided by her tax return is necessary in order to defend against her claim for future loss of earnings.

Section 39–21–113(4)(a), C.R.S. (2004), prohibits the department of revenue from di-

vulging individual's tax returns "except in accordance with judicial order or as otherwise provided by law." Because Spicer is seeking disclosure of tax returns from Alcon rather than the department of revenue, this provision does not directly apply. However, we have determined that, through this statute, the general assembly has "expressed a strong public policy of protecting the confidentiality of taxpayers' state income tax returns." *Losavio v. Robb,* 195 Colo. 533, 539, 579 P.2d 1152, 1156 (1978). Similarly, federal law also evidences a public policy favoring confidentiality of federal tax returns by prohibiting the disclosure of returns except under certain circumstances. 26 U.S.C. § 6103; *See, e.g., Payne v. Howard,* 75 F.R.D. 465, 469 (D.D.C.1977).

In light of this strong policy in favor of protecting the confidentiality of tax returns, we have held that the party seeking release of a tax return bears the burden of showing a "compelling need" for the return. *Losavio* 195 Colo. at 540, 579 P.2d at 1157. Absent a compelling need, a subpoena for a tax return should be quashed. *Id.* Although in *Losavio* we were reviewing a subpoena from a grand jury to the department of revenue, we did not condition the compelling need requirement on the involvement of a grand jury or the department of revenue. Our decision was motivated by the policy of preserving the confidentiality of income tax returns. *Id.* ("We hold that in the face of this important public policy, the party seeking the income tax return, *in this case* the grand jury, bears the burden to show a compelling need for it.") (emphasis added).

Through her responses to interrogatories, Alcon has indicated that her claim for present and future loss of earnings is comprised of lost wages from King Soopers and possible loss of benefits due to forced early retirement. Based on this claim, Spicer can obtain all the information necessary for his defense without viewing Alcon's tax returns. Spicer need not gain a "complete picture" of Alcon's income as captured by her tax returns in order to defend against the type of lost earnings compensation she claims. Consequently, Spicer has not demonstrated a compelling

need for Alcon's tax returns, and the trial court abused its discretion in ordering their production in the absence of the required showing.

## IV. Conclusion

By filing a personal injury lawsuit, Alcon did not inject her physical condition into the case such that she waived the physician-patient privilege for her entire medical history. Therefore, the trial court erred in ordering Alcon to authorize blanket releases for her general family physician's records and pharmaceutical records. Additionally, Alcon's claim for past and future loss of earnings does not entitle Spicer to discovery of the past ten years of her income tax returns. Because Alcon has already provided Spicer with her income information through her W–2 forms, Spicer cannot demonstrate compelling need for the tax returns, and the trial court erred in ordering their disclosure. Accordingly, we make our rule to show cause absolute. The trial court's order is vacated, and we return this case for proceedings consistent with this opinion.